(No. 35696.—

THE PEOPLE *ex rel.* Edward Young, Appellee, *vs.* CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant.

*Opinion filed December 1, 1960.*

HUGH J. DOBBS, of Springfield, and GEORGE M. HOL-LANDER, of Chicago, (GILLESPIE, BURKE & GILLESPIE, of Springfield, of counsel,) for appellant.

PAUL C. VERTICCHIO, State's Attorney, of Carlinville, for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This case is here on appeal from a judgment of the county court of Macoupin County overruling certain objections by appellant to 1957 taxes levied by certain school districts. The revenue being involved, the case has been appealed directly to this court.

Two of the objections which were overruled in the trial court related to the educational fund taxes of certain community unit school districts, which were extended at a rate of 1.25% for school districts having a population of less than 500,000 inhabitants. We held in *People ex rel. Myers* v. *Pennsylvania Railroad Co.*, 19 Ill.2d 122, that section 17—2 of the School Code as it existed in 1957 (Ill. Rev. Stat. 1957, chap. 122, par. 17—2) was not applicable to community unit school districts insofar as educational tax rates were concerned and held that the authority for said districts to levy taxes for educational and building purposes was to be found in section 8—13 of the School Code (Ill. Rev. Stat. 1957, chap. 122, par. 8—13,) pertaining to community unit school districts. Said section authorizes a tax of 1% for educational purposes. The parties have stipulated on this appeal that our decision in the *Myers case* is

controlling as to these objections and have agreed that the judgment of the county court overruling the objections should be reversed and the objections should be sustained.

Three other objections which were overruled by the trial court pertained to a levy for transportation purposes made by three community unit school districts. In each of these districts the school boards levied a tax for transportation purposes and in each case the county clerk extended varying rates so as to produce the taxes so levied. In *People ex rel. Dickey* v. *Southern Railway Co.* 17 Ill.2d 550, we were presented with the question of whether 17—2 of the School Code as amended in 1957 authorized a tax for transportation purposes. The problem in that case was the conflict between two amendments to section 17—2, both enacted in 1957. The first amendment authorized a transportation tax and the second amendment omitted any reference to such a tax. We held that the two amendments could be reconciled, and that the later amendment did not repeal the earlier amendment. We, therefore, held in that case that the transportation tax was authorized. The county collector in the present case relies on the *Dickey case* as authorizing a transportation tax for the three school districts here involved. However, the school districts which were involved in the *Dickey case* were not community unit school districts. The appellant in the present case relies on the *Myers case* and contends that the sole taxing authority for community unit school districts is contained in section 8—13 of the School Code, which did not in 1957 specifically authorize a transportation tax for community unit school districts.

Our holding in the *Myers case* was based upon our opinion in *People ex rel. Moore* v. *Chicago, Burlington and Quincy Railroad Co.* 414 Ill. 419. In that case we held that section 8—13 and section 17—2, which fixed different rates for building purposes, were not repugnant and could both be given effect. In order to give effect to both sections we held that section 8—13 applied to community unit school

districts and section 17—2 applied to other districts. In the *Myers case* the question was again raised as to whether the rates fixed in section 8—13 or those fixed in section 17—2 applied to community unit school districts, and we again held that as to building and educational rates section 8—13 governed community unit school districts. It should be noted that these cases involved tax rates for building and educational purposes and that section 8—13 contained definite provisions as to such rates. Our holding in these cases was simply that the rates which were specified in section 8—13 were controlling. In the present case section 8—13 contains no provision as to a rate for transportation purposes, but section 17—2 does contain such a provision. The problem here is far different than that in the *Myers case* or the *Moore case* where we were concerned with the question of which one of two different rates was applicable. These cases are therefore not controlling here.

Section 17—2 provides that *any school district* having a population of less than 500,000 may levy a tax for transportation purposes. In the absence of compelling reasons to the contrary, the plain language of the section should be given effect. We find no such reasons here. We cannot believe that the legislature intended to deprive community unit school districts of the right to levy a tax for transportation purposes, while all other districts were given such a right. The need for such a tax is as great in community unit districts as in any other district and it would be unreasonable indeed to hold that the legislature intended to prohibit such a tax in the community unit districts. We therefore hold that the provisions of section 17—2 with respect to a tax for transportation purposes is applicable to community unit districts and provides authority for the levy of such a tax by such districts.

One other tax objection involved on the present appeal related to a transportation tax levied by Community Consolidated School District No. 10. The parties have agreed

on this appeal that our holding in the *Dickey case* is controlling and have agreed that the levy for transportation purposes was proper.

This leaves for consideration an objection to the educational fund tax for Community Consolidated School District No. 10. In extending the tax the county clerk extended it at the rate of 1.775% of each $100 assessed valuation. In so extending the tax the county clerk relied upon section 17—5.1 of the School Code which was added to the Code by House Bill 286 of the 67th General Assembly and which became effective as emergency legislation on March 29, 1951. Said section provided: "Notwithstanding any provisions of this Article and in addition to the methods provided in this Article for increasing the tax levy, any school board may until September 1, 1951, increase its existing tax rate for educational purposes * * * to not more than 1.775% in any district, village or city maintaining grades 1 to 12, each inclusive." (Ill. Rev. Stat. 1951, chap. 122, par 17—5.1.) The section further provided that such increase, in order to become effective must be approved by a referendum of the voters. On August 11, 1951, a referendum was held at which the rate of 1.775% was approved. Subsequent to the adopting of said section the legislature passed Senate Bill No. 364, which became effective July 1, 1951. Said bill amended several sections of article 17 of the School Code and repealed several other sections, but did not expressly amend or repeal section 17—5.1. Section 17—4 as amended by Senate Bill 364 increased the maximum rate for educational purposes for schools maintaining grades 1 to 12 to 1.775%, the same maximum rate provided for in section 17—5.1, but in addition to increasing the maximum rate, section 17—4 as amended, provided as follows: "The rate for educational purposes shall not be increased at any single referendum more than .40 of one per cent upon the full, fair cash value as equalized or assessed. * * *." Ill. Rev. Stat. 1951, chap. 122, par. 17—4.

On this appeal the appellant contends that the provision of amended section 17—4, providing that the rate should not be increased more than .40 of one per cent, is inconsistent with section 17—5.1 providing for an increase to a rate of 1.775% without limitation. Appellant relies upon the familiar rule of statutory construction that where two inconsistent acts relating to the same subject matter are enacted at the same session of the legislature, the last enactment controls. Appellant, therefore, contends that the referendum held in August, 1951, which increased the rate from 1%, which was previously in effect, to 1.775% was void, since it increased the rate by more than .40 per cent. Appellee contends that section 17—5.1 and amended section 17—4 are not necessarily inconsistent and argues that section 17—5.1 can still be given effect, notwithstanding the provision in amended section 17—4 imposing a limitation on the amount of an increase at one referendum.

We have repeatedly held that when confronted with the problem arising when two or more bills pertaining to the same subject matter are passed at the same session of the legislature the primary question is the intent of the legislature rather than the technical priority of the passage of the acts, and have held that the mere fact that there are surface inconsistencies between the two bills does not require mechanical application of the rule that the last enactment is the one to be obeyed. (*People ex rel. Dickey* v. *Southern Railway Co.* 17 Ill.2d 550.) In the same case we held that for a later enactment to operate as a repeal by implication, of an earlier act, there must be such total and manifest repugnance that the two cannot stand together, and held that if the two enactments are capable of being construed so that both may stand, it is the duty of this court to so construe them.

With these rules in mind, we shall consider the legislative history of the sections in question. At the time section 17—5.1 was added to the School Code by House Bill

286, there was no general provision limiting an increase at a single referendum. However, an examination of the law as it existed at the time said bill was enacted shows that increases by referendum could only be obtained through a series of referendums. Thus, for districts maintaining grades 1 to 12, a rate of .50 per cent was fixed for educational purposes. (Ill. Rev. Stat. 1949, chap. 122, par. 17—2.) Said rate could be increased by referendum to one per cent (Ill. Rev. State 1949, chap. 122, par. 17—2.) After such increase had been authorized by the voters of the district, the rate could again be increased by referendum to 1.40% (Ill. Rev. Stat. 1949, chap. 122, par. 17—5).) A still further increase was authorized by section 17—5.02 which provided that if a rate of 1.40% had been authorized by referendum the rate could be increased to 1.775% by a new referendum. (Ill. Rev. Stat. 1949, chap. 122, par. 17—5.02.) Thus the practical effect of the law in effect when House Bill 286 was adopted was that the amount of an increase at a single referendum was limited, the amount of the limitation depending upon the rate in effect when the referendum was held. With full knowledge of these provisions, the legislature provided in House Bill 286 for an increase by referendum to a rate of 1.775% "notwithstanding any provisions of this Article and in addition to the methods provided in this Article." The relief provided by the bill was of a temporary and emergency nature, it being provided that a referendum under the bill had to be held prior to September 1, 1951, thus giving school districts only a matter of five months to take advantage of the provision of the bill.

When Senate Bill 364 was enacted in 1951, it amended section 17—4 so as to provide a maximum rate of 1.775% instead of the previous maximum of 1%, and at the same time provided for a maximum increase of .40% at a single referendum. Section 17—5, which had previously authorized an increase by referendum to 1.40% for educational purposes, was amended so as to apply only to rates for

building purposes. Section 17—5.02 which had previously authorized an increase from 1.40% to 1.775%, was repealed. The bill did not repeal section 17—5.1, which had been in effect for almost three months prior to the passage of the bill.

It appears from this statement that the intent of the legislature in Senate Bill 364 was to provide in one section for a maximum rate of 1.775% which could be obtained by referendum, rather than providing for said maximum rate as the end result of several referendums, provisions for which had formerly been found in three separate sections. By imposing a maximum of .40% which could be obtained at a single referendum, the same purpose was accomplished as was accomplished by the former three sections, requiring a series of referendums. That is, both under the law as it previously existed and under amended section 17—4, a district with a low rate could not obtain a rate of 1.775% in one referendum.

We are of the opinion that both section 17—5.1 and amended section 17—4 can be given effect. Section 17—5.1 was enacted as emergency legislation and gave school districts an opportunity, for a limited time, to obtain a tax rate increase without regard to the limitation contained in other sections of article 17. The limitation imposed by amended section 17—4 was no more stringent than those previously in effect, and it is unreasonable to presume that the legislature intended this limitation to be applicable to a referendum under section 17—5.1 when the legislature had expressly provided in said section that until September 1, 1951, the rate could be raised to 1.775% without regard to the limitations otherwise imposed. In *People ex rel. Brenza v. Fleetwood,* 413 Ill. 530, we said (p. 548), "In the absence of legislative intent to the contrary, and where the two acts are not so inconsistent that both cannot stand and be given effect, a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate

act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first." While amended section 17—4 was not entirely a re-enactment of the former law, the limitation provision which is at the heart of the present controversy was substantially the same as that contained in different sections of the former law, and the reasoning in the *Brenza case* is applicable here. We therefore hold that section 17—5.1 remained in force and effect, notwithstanding the later passage of amended section 17—4. The referendum was valid and was sufficient to authorize a rate of 1.775% and the county court properly overruled the objection to this rate.

The judgment of the county court is affirmed to the extent that it overruled objections to the educational rate of District No. 10 (objection 24A) and the transportation tax of District No. 10 (objection 24-B), and is also affirmed to the extent it overruled objections to the transportation taxes of District No. 3 (objection 20-C), District No. 6 (objection 22) and District No. 7 (objection 23). The judgment of the county court is reversed to the extent that it overruled objections to the educational fund taxes of District No. 1 (objection 19-A) and District No. 3 (objection 20-A). The cause is remanded to the county court of Macoupin County for further proceedings in accordance with this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*