(Nos. 48832, 48841 cons.—
LEE J. ANDRUSS, JR., *et al.*, Appellees, v. THE CITY OF EVANSTON *et al.*, Appellants.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

216

CLARK and MORAN, JJ., took no part.

Jack M. Siegel, of Evanston, for appellant City of Evanston.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Roseann Oliver, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

James M. Winning, of Springfield (McDermott, Will & Emery, of Chicago, and Giffin, Winning, Lindner, Newkirk, Cohen, Bodewes & Narmont, of Springfield, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

The defendant city of Chicago, through an ordinance (Municipal Code of Chicago, secs. 113—23, 113—29), undertook to provide that it shall be unlawful to engage in the business of a real estate broker without having first been licensed by the State and then by the city of Chicago.

An annual license fee for a city of Chicago license was $25.

The other defendants, the city of Evanston, the village of Park Forest, the village of Elmwood Park, and the village of Flossmoor, also enacted similar local laws pertaining to real estate brokers.

The question here is whether such licensing is the exclusive power of the State and beyond that of a home rule unit. Since this issue is so broad, what we say concerning the city of Chicago ordinance will be applicable to all local units of government.

The question arises in an action in the circuit court of Cook County by the plaintiffs, real estate brokers on behalf of themselves and all other real estate brokers in Cook County registered under the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 101 *et seq.*). Declaratory and injunctive relief, as well as repayment of all fees collected by the defendants, were sought. The city of Evanston filed a counterclaim alleging it had the power to license persons seeking to act as real estate brokers. It seeks an injunction against the plaintiffs doing business as brokers in Evanston and a declaration that the ordinance was constitutional and enforceable. The counterclaim is determined by the issue in the principal suit. In substance, plaintiffs' complaint was that the General Assembly, by a statute effective September 5, 1974, preempted to the State the exclusive power to license real estate brokers.

The circuit court held all local ordinances of the local governmental units were void and directed that each municipality segregate and deposit into an interest-bearing account the sums collected. The court reserved the question of refund.

The city of Chicago and the city of Evanston filed notices of appeal to the appellate court. Their motion for direct appeal to this court under Rule 302(b) was granted. (58 Ill. 2d R. 302(b).) The village of Park Forest has joined

in the appeal.

Sections 6(a), 6(h), and 6(i) of article VII of the 1970 Illinois Constitution provide:

"(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power or a power or function specified in subsection (l) of this Section.

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

By an amendment to the Real Estate Brokers and Salesmen License Act which became effective September 5, 1974 (Pub. Act 78—1208, 1974 Ill. Laws 1164), section 24 was added to the statute (Ill. Rev. Stat. 1975, ch. 114½, par. 124). This new section provides as follows:

"*** It is declared to be the public policy of this State, pursuant to paragraphs (h) and (i) of Section 6 of Article VII of the Illinois Constitution of 1970, that any power or function set forth in this Act to be exercised by the State is an exclusive State power or function. Such power or function shall not be exercised concurrently, either directly or indirectly, by any unit of local government, including home rule units, except as otherwise provided in this Act.

Nothing in this Section shall be construed to affect or impair the validity of Section 11—11.1—1 of the 'Illinois Municipal Code', approved May 29, 1961, as amended, or to deny to the corporate authorities of any municipality the powers granted in that Act to: enact ordinances prescribing fair housing practices, defining unfair housing

practices, establishing Fair Housing or Human Relations Commissions and standards for the operation of such commissions in the administration and enforcement of such ordinances; prohibiting discrimination based on race, color, creed, ancestry, national origin or physical or mental handicap in the listing, sale, assignment, exchange, transfer, lease, rental or financing of real property for the purpose of the residential occupancy thereof; and prescribing penalties for violations of such ordinances."

Here the General Assembly clearly determined that the State had the exclusive power to regulate the licensing of real estate brokers and salesmen. What was left to the municipality were the powers given by section 11—11.1—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—11.1—1). These had to do with the enactment of antidiscrimination ordinances. No authority granted under section 11—11.1—1 of the Illinois Municipal Code has to do with the licensing of real estate brokers. Defendants' argument that such is necessary to enforce such antidiscrimination ordinances is without merit. These laws can be enforced by imposing penalties without the power to license real estate brokers and salesmen.

The invalidity of the ordinance is clear when evaluated in terms of the Constitution and the statute. Although not requisite to the present situation, the intent of the legislature not to grant concurrent powers to municipalities to license real estate brokers is underscored by the rejection of the following offered amendments which were defeated.

"(a) Amendment No. 6. Amend Senate Bill 1502 on page 1, line 17, by inserting after the period the following:

'Nothing in this Section (Sec. 24) shall be construed to invalidate or prohibit the enforcement of any ordinance enacted by the corporate authorities of a municipality prior to the effective date of this amendatory Act of 1974 pursuant to powers granted to such corporate authorities by Section

11—11.1—1 of the "Illinois Municipal Code", approved May 29, 1961, as amended.'; and

(b) Amendment No. 7. Amend Senate Bill 1502 on page 1, line 17, by inserting after the period the following:

'Any home rule power or function which is not specifically set forth in this Act as a power or function to be exercised by the State may be exercised by home rule units including, but not limited to, the power: to define unfair housing practices; to establish Fair Housing or Human Relations Commissions and provide them with enforcement procedures; to prohibit discrimination based on race, color, creed, ancestry, national origin, or physical or mental handicap in the listing, sale, assignment, exchange, transfer, lease, rental or financing of real property for the purpose of residential occupancy thereof; and to prescribe penalties for violations of such ordinances.' "

Nor are we in new waters. Our course is charted by *United Private Detective & Security Association, Inc. v. City of Chicago* (1976), 62 Ill. 2d 506. There the State had enacted, by a simple majority vote, an act giving the State the power to license detectives and detective agencies. Subsequently the city of Chicago enacted an ordinance which required persons or agencies registered with the State to obtain a license from the city as well.

Various persons registered with the State sued to declare the ordinance invalid because it contravened a provision in the State license statute whereby the power to regulate the private detective business "shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units." Defendants contended that since the statute had been passed by less than a three-fifths vote, it could only preempt local regulation in areas where the State was already regulating, and left local units free to regulate the business in other respects. The trial court agreed and dismissed the suit. This court reversed, holding that the

preemption provision could not be so narrowly read. The court also held that the new statute repealed by implication existing laws authorizing local units to regulate the private detective business and that express repeal of these prior licensing laws was unnecessary. The same is true here. It was not necessary for the General Assembly to insert into the general licensing act (Ill. Rev. Stat. 1975, ch. 24, par. 11—42—1) the preemption declared by section 24 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1975, ch. 114½, par. 124), or to delete the term "brokers" from the general act.

The city of Chicago argues, however, that even if the amendment to the Real Estate Brokers and Salesmen License Act is deemed to have preempted local governmental units from licensing, that effect was dissipated on September 7, 1974, with the enactment of Public Act 78—1237, which was approved on that date. Public Act 78—1237 amended the general licensing section of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 11—42—1) by the addition of the words italicized below:

> "The corporate authorities of each municipality may license, tax, and regulate auctioneers, private detectives, money changers, bankers, brokers *other than insurance brokers,* barbers, and the keepers or owners of lumber yards, lumber storehouses, livery stables, public scales, ice cream parlors, coffee houses, florists, detective agencies, barber shops and sellers of tickets for theatricals, shows, amusements, athletic events and other exhibitions at a place other than the theatre or location where the theatricals, shows, amusements, athletic events and other exhibitions are given or exhibited." 1974 Ill. Laws 1203, Ill. Rev. Stat. 1975, ch. 24, par. 11—42—1.

Since the term "brokers" was previously held to include real estate brokers (*Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530), the city contends that the failure of the legislature to delete the term "brokers" when Public Act 78—1237 was enacted shows

an intention to restore the former licensing power of local governments.

We do not find the argument persuasive. There are multiple types of brokers apart from insurance and real estate brokers, such as brokers of perishable agricultural commodities, stock brokers, and warehouse brokers, to mention a few. The general rule where two acts relating to the same subject matter are enacted at the same session of the General Assembly was stated in *People ex rel. Dickey v. Southern Ry. Corp.* (1959), 17 Ill. 2d 550:

> "For a later enactment to operate as a repeal by implication of an earlier one there must be such total and manifest repugnance that the two cannot stand together. \*\*\*
>
> \*\*\*
>
> \*\*\* [I]n the absence of a clear legislative intent to the contrary and where two acts are not so inconsistent that both cannot stand and be given effect, a later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first." 17 Ill. 2d 550, 555-56.

The retention in Public Act 78–1237 of the term "brokers" did not serve to repeal section 24 of Public Act 78–1208.

The ordinances in question are void.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

CLARK and MORAN, JJ., took no part in the consideration or decision of this case.