CHRISTINE RAWLINGS, Plaintiff-Appellant, *v.* THE DEPARTMENT OF LAW ENFORCEMENT *et al.*, Defendants-Appellees.

Third District   No. 78-268

Opinion filed June 5, 1979.

Bruce H. Bornstein and Robert W. Esler, both of Western Illinois Legal Assistance Foundation, of Rock Island, for appellant.

William J. Scott, Attorney General, of Chicago (Gail Moreland, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Christine Rawlings appeals from an order affirming the administrative decision of the Illinois Department of Law Enforcement which denied plaintiff's application for a firearm owner's identification card. The appeal is brought pursuant to section 13 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 276).

Applicant Rawlings asserts she was denied an identification card because she had been a patient in a mental institution within 5 years of her application for an ID card. (Ill. Rev. Stat. 1977, ch. 38, pars. 83—4, 83—8.) On this appeal, Rawlings challenges the action of the Department in denying her an ID card and also challenges the authority upon which that action was based, being sections 4 and 8 of "An Act relating to the acquisition * * * of firearms * * *" (hereinafter Firearms Act) (Ill. Rev. Stat. 1977, ch. 38, pars. 83—4, 83—8). These sections are challenged on Federal and State due process and equal protection grounds. An additional issue is raised with respect to the taxing of costs to the applicant in the circuit court.

The facts in the record are clear and uncontroverted. On December 13, 1977, Christine Rawlings applied to the Department for an ID card. Section 2 of the Firearms Act mandates that an individual must have a card issued by the Department in order to legally possess a firearm or firearm ammunition within the State of Illinois. Possession of a firearm or ammunition without a card can result in conviction for a Class A misdemeanor under the Act's provisions. (Ill. Rev. Stat. 1977, ch. 38, par. 83—14.) At the time of her application to the Department, Christine

Rawlings had recently moved to Illinois from Missouri. Also, in October 1977, she had voluntarily committed herself to a Rock Island mental institution for an undisclosed reason. On her ID card application, applicant Rawlings answered affirmatively to the question of whether she had been a patient in a mental institution within the past five years. The Department responded by letter indicating that it would deny her application if the stay was confirmed. That letter also advised Rawlings that she could submit further information for the Department's consideration which would be reviewed before a final decision on her application was rendered. She wrote back indicating only that her stay, of 10 days, was due to unusual and extreme circumstances and that it was on a voluntary basis. She asked for reconsideration of their decision. On January 20, 1978, the Department denied applicant Rawlings' application for an ID card, the denial based upon her 10-day hospitalization in the Rock Island mental hospital. If plaintiff Rawlings had indicated that she was in the institution for a reason not showing any continuing problem, the director may have conducted a hearing, if requested by plaintiff, to allow her to show fitness. He could have granted plaintiff's request. Rawlings did not appeal the denial to the director, as provided for in section 10 (Ill. Rev. Stat. 1977, ch. 38, par. 83—10) of the Act. Instead she prosecuted an appeal to the circuit court, via the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), seeking reversal of the administrative decision made by the Department in her case. She was allowed to file her action as a poor person after filing the appropriate motion and affidavit. (Ill. Rev. Stat. 1977, ch. 33, par. 5.) The circuit court rejected the constitutional arguments raised by the applicant Rawlings and entered its order upholding the decision of the Department. It also, after an examination of the affidavit to file as a poor person, ordered that Rawlings pay costs within 60 days.

On appeal, appellant Rawlings raises a number of issues as to the constitutionality of the statutory provisions requiring a denial of an ID card to persons who have been patients in mental institutions within 5 years of their applications for such cards. Her arguments are based on the due process and equal protection guarantees of the Federal and State constitutions. A final issue is also raised with respect to the taxation of costs. We turn first to the more substantial issues raised.

Plaintiff-appellant argues that the statutory scheme denying ID cards to persons who have been patients in mental institutions within five years of their applications is invalid (1) because it fails to provide a hearing whereby such persons could present evidence of their fitness to possess a gun; (2) because it contains an irrebuttable presumption impermissible under the due process clause; and (3) because the classification violates the equal protection guarantees of both the Federal Constitution and the

Constitution of the State of Illinois in treating persons, similarly situated, differently without adequate justification. A careful look at the provisions involved is necessary before addressing the issues raised.

Section 24—3.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 24—3.1) states that a person commits the offense of unlawful possession of a firearm, a Class A misdemeanor, when:

"(1) He is under 18 years of age and has in his possession any firearm of a size which may be concealed upon the person.

(2) He is under 21 years of age, has been convicted of a misdemeanor other than a traffic offense or adjudged delinquent and has any firearms or firearm ammunition in his possession; or

(3) He has been convicted of a felony under the laws of this or any other jurisdiction within 5 years from release from the penitentiary or within 5 years of conviction if penitentiary sentence has not been imposed, and has any firearms or firearm ammunition in his possession; or

(4) He is a narcotic addict and has any firearms or firearm ammunition in his possession; or

(5) He has been a patient in a mental hospital within the past 5 years and has any firearms or firearm ammunition in his possession; or

(6) He is mentally retarded and has any firearms or firearm ammunition in his possession."

Sections 1 through 14 of the Firearms Act (Ill. Rev. Stat. 1977, ch. 38, pars. 83—1 through 83—14), establishing the requirement for ID cards and the procedure to obtain them, were created and adopted to aid in the enforcement of section 24—3.1 of the Criminal Code of 1961. Section 1 of the Firearms Act, being the legislative declaration concerning the provisions for firearm ID cards, so states. Section 4 of the Firearms Act then requires applicants for an ID card to submit evidence that they are not members of the enumerated classes of persons who are prohibited by section 24—3.1 from acquiring or possessing firearms or firearm ammunition. The Department is required to approve or deny such applications within 30 days of their receipt. Section 8 of the Firearms Act grants the Department the authority to deny or revoke an application or a previously issued ID card when it finds that the person applying for, or possessing, such card belongs to one of the five classes of persons specified in section 4, those being classes (2) through (6) of section 24—3.1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1977, ch. 38, pars. 83—8, 83—4, 24—3.1(a).) Further pertinent sections provide for notice of the denial of such application, administrative appeal to the director, and judicial review under the Administrative Review Act. Ill. Rev. Stat. 1977, ch. 38, pars. 83—9, 83—10, 83—11.

The issues sought to be raised on appeal deal specifically with due process and equal protection matters. However, the essential issue, which is not directly addressed although it largely encompasses the other issues raised, is one as to the limits of the State's police power. As stated in section 1 of the Firearms Act, the legislative action establishing an identification system for owners and possessors of firearms was taken pursuant to the police power vested in the legislature to make all laws necessary for the safety and welfare of the public. While issues arising from the interplay between the police power and the safeguards of the Constitution are often complex and fraught with important social implications, the basic rules in the area are few and relatively straightforward.

■■■ As stated by the Illinois Supreme Court in *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 479-80, 193 N.E.2d 40, when discussing that interplay:

> "Neither the fourteenth amendment nor any provision of the Illinois constitution prevents the enactment of laws for the protection of the public health, safety, welfare or morals, and neither do they prohibit legislative classifications reasonably calculated to promote or serve such public interests. [Citations.] Rather, they invalidate only enactments that are arbitrary, unreasonable and unrelated to the public purpose sought to be attained, or those which, although reasonably designed to promote the public interest, effect classifications which have no reasonable basis and are therefor arbitrary. [Citations.] The reasonableness of a police regulation is not necessarily what is best but what is fairly appropriate under all circumstances, [citations] and in like manner, a classification which has some reasonable basis is not unconstitutional because it is not made with mathematical nicety or because in practice it results in some inequality."

The standards to be applied have been variously stated (see *Rios v. Jones* (1976), 63 Ill. 2d 488, 497-98, 348 N.E.2d 825; *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76-77, 329 N.E.2d 213), but the essential test is reasonableness: whether the ends sought to be achieved are proper for invocation of the police power and whether the means utilized to achieve those ends are reasonable. As is evident from the standards applied to legislative action under the police power, a wide discretion is granted to the legislature to determine what the public interests require and what means are necessary for the promotion and protection of those interests. As is the case with constitutionally challenged legislation, a presumption of constitutionality adheres to the acts of the legislature, and it is the burden of one assailing a statute to prove its unconstitutionality.

*Contemporary Music Group, Inc. v. Chicago Park District* (1978), 57 Ill. App. 3d 182, 186, 372 N.E.2d 982.

■■ ■ While none of the legislative history of sections 1 to 14 of the Firearms Act is present in the record on this appeal, we believe it apparent that the legislative purpose in enacting those provisions was to protect the health and safety of the public by denying legal possession of firearms to certain classes of persons that the legislature determined presented a higher risk of danger to the public, and to themselves, when in possession of a firearm. We have no difficulty in finding that such a purpose is within the purview of the police power possessed by the legislature. (*Brown v. City of Chicago* (1969), 42 Ill. 2d 501, 250 N.E.2d 129.) The inquiry thus focuses upon whether the means employed to achieve the ends are reasonable. In the instant case, the means specifically utilized is the denial of such ID card to any person who, within five years of his application, has been a patient in a mental institution. We do not find, in reviewing this matter, that the classification utilized has no reasonable basis and is, therefore, arbitrary. We find a rational and reasonable connection between the means used and the purpose sought to be attained, for we find acceptable and rational the general proposition that persons who have been treated at mental institutions, for whatever myriad of problems, present a higher risk of danger, to themselves and the public, when in possession of a firearm, than those not so treated. We recognize the generality of the proposition and that there are certainly individual exceptions, as there are undoubtedly exceptions within each category authorizing denial of possession of guns in the Act. Yet, the police power, by its nature and the nature of the purposes it serves, often requires such broad classifications, and the test is "not necessarily what is best but what is fairly appropriate under all circumstances, [citations] and in a like manner, a classification which has some reasonable basis is not unconstitutional * * * because in practice it results in some inequality." *City of Chicago v. Vokes* (1963), 28 Ill. 2d 475, 479-80.

■■ We think it pertinent to our inquiry and determination on this issue that it be noted that the right to own and possess firearms is not protected under the Federal Constitution. (*United States v. Miller* (1939), 307 U.S. 174, 83 L. Ed. 1206, 59 S. Ct. 816.) *Miller* found that the second amendment's guarantee is limited to arms that have "some reasonable relationship to the preservation or efficiency of a regulated militia * * *." (307 U.S. 174, 178, 83 L. Ed. 1206, 1209, 59 S. Ct. 816. See also *Brown v. City of Chicago* (1969), 42 Ill. 2d 501, 504.) Thus, we are not dealing with an exercise of the police power infringing upon a constitutionally protected fundamental right or interest. And while the Illinois Constitution grants to the individual the right to keep and bear arms (Ill. Const. 1970, art. I. §22), infringement is expressly allowed in the exercise of the police power. As noted in the commentary accompanying

that section (Ill. Ann. Stat., 1970 Const., art. I, §22 (Smith-Hurd 1971)):

> "It was not the intent of the Convention, in adopting Section 22, to invalidate laws requiring the licensing of gun owners, the registration of firearms or the prohibition against carrying concealed weapons. See, *e.g.* Ill. Rev. Stat., ch. 38, §83.1 (1969)."

In light of the unprivileged position in which the right to possess arms stands, we find that the individual's interest in possessing arms is not sufficient to render the legislation at issue herein unconstitutional. As stated in *Rios v. Jones* (1976), 63 Ill. 2d 488, 497, 348 N.E.2d 825:

> "The demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society. [Citation.] If, after balancing these interests, the State's exercise of its police power is deemed to be reasonable, the legislation in question must be upheld."

We find the provisions assailed to be clearly reasonable, on balance, and we uphold them as a valid exercise of the police power.

While our decision that the classification is reasonable and therefore valid as a police power measure effectively disposes of the constitutional issues raised by appellant Rawlings, we should briefly consider those issues and further reasons for their inapplicability to the instant case.

■■ The argument that due process guarantees have been violated by the failure to give applicant Rawlings a hearing at which she could have presented evidence of her fitness to possess a gun is unconvincing. Initially, it must be noted that a hearing procedure is provided for in the statute. Section 10 of the Firearms Act (Ill. Rev. Stat. 1977, ch. 38, par. 83—10) allows an aggrieved party to appeal to the Director of the Department, requesting a hearing, when an application is denied. A hearing may be held when the director is satisfied that substantial justice has not been done. Despite appellant's argument to the contrary, we find that the discretionary hearing is permissible in light of the nature of the interest involved. Moreover, we find that Rawlings did not pursue the hearing procedure available to her. Having failed to pursue this review avenue, it could be concluded that she is in no position to challenge it on appeal.

■■ We would note, in passing, that the case relied upon by Rawlings, *Freitag v. Carter* (7th Cir. 1973), 489 F.2d 1377, involved infringement of the fundamental right to employment without any provision for notice or hearing. The instant case involves no similar interest in liberty or property rights protected under the constitution, and a hearing procedure, as above mentioned, has been provided. The statutory provisions relating to firearm owners identification cards did not violate due process because a hearing procedure was available to applicant Rawlings.

■■ ■ Appellant next contends that the statute creates an irrebuttable presumption of unfitness and that it, therefore, violates the due process clause of the Federal Constitution. (See *Cleveland Board of Education v. LaFleur* (1974), 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791; *Vlandis v. Kline* (1973), 412 U.S. 441, 37 L. Ed. 2d 63, 93 S. Ct. 2230; *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.) The continued viability of the irrebuttable presumption doctrine is of considerable doubt (see, *e.g., Elkins v. Moreno* (1978), 435 U.S. 647, 660-61, 55 L. Ed. 2d 614, 625, 98 S. Ct. 1338, 1346; *Usery v. Turner Elkhorn Mining Co.* (1976), 428 U.S. 1, 49 L. Ed. 2d 752, 96 S. Ct. 2882), as is the exact nature of the doctrine. In any event, those cases cited by applicant Rawlings all involved substantial rights and interests protected by the constitution. We have already determined that is not involved in the instant case. In addition, those cases did not present questions as to a reasonable accommodation between those substantial rights and interests and a police power action with respect to gun regulation. We do not find *LaFleur, Vlandis* or *Stanley* controlling on the issue before us in light of these differences. An additional basis for the inapplicability of the above cases is that the presumption herein involved is not conclusive. We construe the terminology used in section 4 and the power granted in section 10(b) as granting to the Department discretion as to the issuance of licenses. The supplementary language of section 10 gives the director the discretionary power, if he determines that "substantial justice" has not been done, to order a hearing be held by the Department. The granting of such a hearing, in the interests of substantial justice, would be a hollow measure, indeed, unless the Department also has the power, after the hearing, to see that substantial justice is done. We conclude that, when read together, sections 4 and 10 indicate a legislative intent that the Department have authority, in extraordinary cases, to grant a license to persons who have established their fitness to possess a gun, even though belonging to one of the enumerated classes. We note that this is the position of the Department in its appellate arguments, and we agree. As to the applicant's argument that such a construction is contradictory to the language of section 24—3.1 of the Criminal Code, set out above, we think it clear that the latter enactments, sections 4 and 10 of the Firearms Act, must be construed to mean that persons who have obtained from the Department a valid firearm ID card are not liable for criminal sanctions under section 24—3.1.

■■ Even if one construes the statute as creating a conclusive presumption, we believe the statutory scheme could be upheld as valid. As noted above, the nature of the individual interests and societal interests involved are considerably different than in the irrebuttable presumption cases cited by applicant. In addition, the mere existence of a conclusive

presumption does not automatically invalidate a statutory scheme. The inquiry, when such a presumption is utilized by the legislature in the exercise of the police power, is the same as for other questions of police power usage, *i.e.*, whether the presumption is irrational, arbitrary and unreasonable. We find that, in light of the interests involved, even a conclusive presumption would survive a constitutional attack on due process grounds.

■■ Appellant next pursues an equal protection issue, arguing that mental patients are a suspect category which requires strict judicial scrutiny over any legislation affecting them. If a suspect class is involved, then the State must establish a compelling interest for the legislative classification touching the suspect class. (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278.) It is clear that status as a mental patient has not been held to be a suspect class and we do not so find. As to appellant's equal protection argument that the classification is discriminatory and does not meet the rational relationship test (see *Wes Ward Enterprises, Ltd. v. Andrews* (1976), 42 Ill. App. 3d 458, 467, 355 N.E.2d 131), our discussion and determination of the rationality and reasonableness of the classification, under the police power analysis previously set forth, covers that issue.

Appellant Rawlings urges that section 9—11 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 9—11) evidences an implication supportive of her right to a hearing in order to present evidence of her fitness. While we have already determined that no due process violation exists with respect to the hearing procedure utilized, a closer look at section 9—11 is required, given its apparent inconsistency with the statutory scheme for firearm owners identification cards. Section 9—11 provides:

> "No admission to any hospital under this Act or any finding of need of mental treatment or need of treatment for mental retardation, or any authorization of continued hospitalization under this Act is (a) an adjudication of legal incompetency or (b) deprives the person of his right to exercise all his civil rights, including but not limited to civil service status, the right to vote, rights relating to the granting, renewal, forfeiture or denial of a license, permit, privilege, or benefit pursuant to any law * * *."

■■ ■ It is an established rule of statutory construction that when two acts relating to the same subject matter are passed by the same legislature, as these were in 1967, it is the duty of the courts to construe them so that they stand together, if they are capable of being so construed. (*People ex rel. Young v. Chicago & North Western Ry. Co.* (1960), 20 Ill. 2d 462, 467, 170 N.E.2d 614.) For one act to repeal or invalidate another there must be a total and manifest repugnance such that the two cannot stand

together. (*Andruss v. City of Evanston* (1977), 68 Ill. 2d 215, 222, 369 N.E.2d 1258.) Our conclusion as to these statutory provisions is based upon the rule of construction which construes a more specific provision, in this case sections 4 and 8 of the Firearms Act, as limiting the more general provision, herein section 9—11 of the Mental Health Code. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 557, 359 N.E.2d 113; *Cook County Police & Corrections Merit Board v. Fair Employment Practices Com.* (1st Dist. 1978), 59 Ill. App. 3d 305, 376 N.E.2d 11.) Utilizing these rules of construction, we conclude that sections 4 and 8 of the Firearms Act (Ill. Rev. Stat. 1977, ch. 38, pars. 83—4, 83—8) act to limit, where reasonably applicable, the broad language of section 9—11 of the Mental Health Code with respect to the consequences which flow from an admission to a mental institution under the Act. Such a construction is also consistent with the intent of the legislature as that can be gleaned from the order in which the statutes were passed. While both statutory schemes were passed in 1967, section 9—11 of the Mental Health Code had virtually the same pertinent language as former section 8—13 (Ill. Rev. Stat. 1965, ch. 91½, par. 8—13). The sections with respect to firearm owners identification cards had no prior statutory equivalent. Those sections, standing as they do with respect to section 9—11 as subsequent enactments, would be given precedence in seeking to construe the statutes so as to uphold both. Such construction as we adopt also is consistent with section 24—3.1 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 24—3.1), which makes it a criminal offense for a person who has been a patient in a mental institution to possess a firearm within five years after such admission and stay.

■■ ■ The final issue raised on this appeal concerns the assessment of costs to applicant Rawlings after judgment was entered against her in the administrative review action. Rawlings had been permitted to file her review action as a poor person under section 5 of the costs statute (Ill. Rev. Stat. 1977, ch. 33, par. 5). Section 5 states:

> "If any court shall, before or after the commencement of any suit, be satisfied that the plaintiff or defendant is a poor person, and unable to prosecute or defend suit and pay the costs and expenses thereof, the court may, in its discretion, permit him to commence and prosecute his action, or defend suit, as a poor person; and thereupon such person shall have all the necessary writs, process, appearances and proceedings, as in other cases, without fees or charges. The court may assign to such person counsel, who, as well as all other officers of the court, shall perform their duties in such suit without any fees, charge or reward. If judgment be entered for the plaintiff or defendant there shall be judgment for his costs;

which costs shall be collected for the use of the officers. If the suit is settled without the entry of judgment, the party who has thus been permitted to sue or defend as a poor person shall nevertheless be under the duty of paying forthwith to the Clerk of the Court and the Sheriff respectively, out of any moneys or property received by him or on his account as the proceeds of any such settlement, the amount of all fees and charges which but for the leave given to sue or defend as a poor person, such party would have been required to advance to such officers respectively."

Rawlings filed the appropriate motion, under section 5, requesting that the court allow her to sue as a poor person. She also filed in connection therewith an application to file as a poor person and an affidavit as to assets and liabilities. The trial court allowed the said motion, ordering that the plaintiff Rawlings be allowed to file as a poor person. Upon entering judgment finding that Rawlings was not entitled to the relief requested in her complaint for judicial review of administrative action, the court, another judge then presiding, ordered that Rawlings pay costs. The asserted basis for the reversal of the earlier order allowing Rawlings to proceed as a poor person was a "re-examination" of the affidavit to file as a poor person. We find no basis for the reversal by the court and thus vacate the assessment of costs. Once a court has determined, on the basis of information supplied, that a person is entitled to proceed as a poor person, that decision should not be reversed unless it is shown either that the information given was significantly erroneous or that the financial condition of the applicant has significantly improved in such manner that the applicant would no longer be entitled to file as a poor person. Any other rule, permitting a circuit court to reverse itself at will on the question, would be totally inequitable with respect to the person given court leave to file and proceed as a poor person. It is entirely conceivable that such persons would not pursue actions if they knew that upon losing an action, they could be required to pay all costs. We find that the action of the court in reversing itself on Rawlings' status as a poor person is not supported by either the statutory provision application nor by the facts as shown in the present case. We, therefore, vacate the order assessing costs.

■■ The State's argument that section 6 of the costs statute (Ill. Rev. Stat. 1977, ch. 33, par. 6) allows the action taken by the trial judge in this case is unconvincing. Section 6 states:

"If, prior to the commencement of any suit in a court, a person desiring to commence such suit in such court, shall file with the clerk thereof an affidavit, stating that he is a poor person and unable to pay costs, and that his cause of action is meritorious, such clerk shall issue, and the sheriff shall serve, all necessary process

without requiring ·costs: Provided, if judgment shall be entered against such plaintiff, it shall be for costs, unless the court shall otherwise order."

This section, unlike section 5, does not contemplate court review and court action with respect to filing as a poor person. It is directed to the clerk of the court and addressed only the question of process costs. The final proviso with respect to the assessment of costs if a judgment is entered against such plaintiff applies only in the situation as specified in section 6, that is, where only an affidavit has been filed with the clerk. It does not apply to situations contemplated in section 5 wherein a court has reviewed an application to file as a poor person and has granted such application.

The decision of the Circuit Court of Rock Island County is affirmed insofar as it upheld the constitutionality of sections 4 and 8 of the Firearms Act. The assessment of costs against Rawlings is reversed.

Affirmed in part and reversed in part.

STENGEL and BARRY, JJ., concur.