MICHAEL KALODIMOS *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF MORTON GROVE, Defendant-Appellee.

First District (3rd Division)   No. 82—282

Opinion filed February 9, 1983.—Rehearing denied April 20, 1983.

Pedersen & Houpt, of Chicago (Michael K. McCabe, Richard E. Gardiner, Robert Dowlut, Richard V. Houpt, Sheldon Davidson, and Donald J. Moran, of counsel), for appellants.

Martin C. Ashman, Ltd., and Jenner & Block, both of Chicago (Thomas P. Sullivan, Michael H. Salsbury, and Eugene R. Wedoff, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Michael Kalodimos, George L. Reichert, Robert E. Metler, and Richard A. Schnell, filed this suit for declaratory and injunctive relief challenging the constitutionality of defendant village of Morton Grove's Ordinance 81-11, "An Ordinance Regulating the Possession of Firearms & Other Dangerous Weapons." Plaintiffs appeal from the trial court's decision granting defendant's cross motion for summary judgment in which the validity of the ordinance was upheld, and denying plaintiffs' motion for summary judgment.

The ordinance in question provides that "[n]o person shall possess, in the Village of Morton Grove *** [a]ny handgun, unless the same has been rendered permanently inoperative." The ordinance specifies various exceptions for certain categories of persons such as peace officers, prison officials, members of the armed forces and national guard and, under certain conditions, licensed gun collectors. Plaintiffs, residents of Morton Grove who own and possess operative handguns and who all within none of the exceptions, charge that the ordinance is invalid because it infringes upon the right of the individual citizen to keep and bear arms as guaranteed by article I, section 22, of the 1970 Illinois Constitution.

Section 22 provides that, "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be in-

fringed." (Ill. Const. 1970, art. I, sec. 22.) In construing section 22 the trial court relied primarily upon the plain meaning of its language, the majority report submitted to the delegates by the committee which proposed the section to the constitutional convention, and on the official explanation which accompanied the proposed constitutional provision on its submission to Illinois voters. The trial court found the handgun to be an arm within the meaning of section 22. Noting that individuals were free to possess other types of arms; however, the trial court found the Morton Grove ordinance to be a reasonable exercise of the village's police power.

On appeal, plaintiffs contend that the plain meaning of section 22, as understood by both the drafters and the voters, establishes that it guarantees the right to keep a handgun. That right, plaintiffs argue, is subject to reasonable regulation, not prohibition, pursuant to the police power. They therefore urge that we find the ordinance in question to be unreasonable and improper exercise of police power in that it operates to nullify a constitutional guarantee.

Both sides agree that handguns are included within the class of arms protected by section 22. Their point of contention is whether a ban on handguns alone is a proper exercise of local police power where citizens are free to possess other types of protected arms.

Plaintiffs correctly assert that the true inquiry in interpreting a constitutional provision concerns the common understanding of that provision by the voters who, by their vote, gave life to the provision. (*People ex rel. Cosentino v. County of Adams* (1980), 82 Ill. 2d 565, 413 N.E.2d 870.) We find, however, that in the present case, examination of the most reliable determinants of that common understanding leaves unresolved the issue with which we are concerned.

The official explanation merely asserts that "the right of the citizen to keep and bear arms cannot be infringed, except as the exercise of this right may be regulated by appropriate laws to safeguard the welfare of the community." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2689 (Proceedings).) This explanation provides no more guidance than does the plain language of section 22 in helping to determine whether such regulation may include a prohibition against one category of protected arms.

Similarly, plaintiffs' reliance on the majority report of the Bill of Rights Committee is misplaced. Plaintiffs argue that the report, which was presented by the majority of the committee who proposed section 22 to the delegates prior to their debates, indicates that both the members of the committee and the other delegates understood section 22 to preclude a ban on the possession of handguns. The portion of

the report on which plaintiffs rely provides:

"[T]he proposed new provision *** seeks to assure that the 'arms' involved are not limited by the armaments or needs of the state militia or other military body. The substance of the right is that a citizen has the right to possess and make reasonable use of arms that law-abiding persons commonly employ for purposes of recreation or the protection of person and property. Laws that attempted to ban all possession or use of such arms, or laws that subjected possession or use of such arms to regulations or taxes so onerous that all possession or use was effectively banned, would be invalid." (6 Proceedings 87.)

While the language clearly indicates that handguns are within the type of arms protected by section 22, it does not clearly preclude a ban on handguns absent a ban on other protected arms. Indeed, the report also notes the "extraordinary threat to the safety and good order of society" posed by the possession of arms and recites that in response to that threat section 22 would provide for an "extraordinary degree of control" over the possession of arms pursuant to the police power. 6 Proceedings 88.

Since the meaning accorded section 22 is otherwise doubtful with regard to the extent of control permissible under the police power, it is appropriate to consult the debates of the delegates to the constitutional convention to ascertain the intent of the drafters. (*Drury v. County of McLean* (1982), 89 Ill. 2d 417, 433 N.E.2d 666.) This approach was recently used by the Federal court in *Quilici v. Village of Morton Grove* (7th Cir. 1982), 695 F.2d 261, where it upheld the constitutionality of the same ordinance in question here. Finding the language of section 22 to be unclear, the court based its interpretation of the section on the constitutional debates. It concluded that section 22 grants only the right to possess arms, not handguns. While finding that the framers intended handguns to be within the class of protected arms, it also found the framers to have envisioned that a permissible exercise of police power might include a prohibition on handguns. We believe that this interpretation of section 22 is amply supported by the debates, and we adopt the reasoning expressed by the seventh circuit.

We reject plaintiffs' contention that the debates regarding the present issue are confusing, contradictory and inherently unreliable. Conversely, we find that they demonstrated a consensus among the delegates with regard to the scope of protection accorded handguns pursuant to section 22 and the extent to which that protection is limited by the police power.

In explaining section 22 to the delegates, Delegate Foster specifically asserted the majority view that "under this provision, the state would have the right to prohibit some classes of firearms, such as war weapons, handguns, or some other category." (3 Proceedings 1687.) This view was reiterated throughout the debates (3 Proceedings 1688, 1689, 1693, 1718), the consensus of the majority being that, although section 22 "would prevent a complete ban on all guns *** there could be a ban on certain categories." (3 Proceedings 1693.) Although some delegates who supported the majority view expressed a preference for a stronger right to arms which would have precluded such a ban (3 Proceedings 1704, 1707), no delegate indicated that he so interpreted section 22 as it was proposed and ratified.

Even the minority delegates favored the interpretation given by the majority. Their concern was that the language, which they viewed as ambiguous, might be misinterpreted by the courts and result in the invalidation of the type of arms regulation with which we are concerned in the present case. (3 Proceedings 1693, 1694, 1695, 1709.) While recognizing that a ban on handguns probably would be upheld by the courts, the minority was reluctant to take that risk. (3 Proceedings 1693, 1694.) Fearing that the effect of the majority proposal could possibly "be to limit, in some indefinite and unpredictable fashion, the power of the legislature to pass whatever laws are needed in this field to protect the public safety" (3 Proceedings 1694), the minority preferred omitting entirely from the Constitution any provision purporting to guarantee a right to bear arms. 3 Proceedings 1696, 1697.

The debates thus convince us that the framers intended that a ban on handguns be a permissible exercise of the police power pursuant to section 22. Although the explanation given the voters was less clear in this regard, we find no indication that the common understanding of the voters was contrary to that of the framers.

We reject plaintiffs' contention that this interpretation of section 22 renders illusory the right to arms. While we agree with plaintiffs that gun control legislation could vary from municipality to municipality, we find that the framers envisioned this kind of local control. Such variations would not render the right illusory because the citizens of each municipality would retain the right to bear some type of arms.

We also reject plaintiffs' contention that the ordinance in question was an unreasonable exercise of the police power. A municipality has broad discretion to determine not only what the interests of the public welfare require but what measures are necessary to secure those in-

terests. We will not disturb an exercise of police power merely because there is room for a difference of opinion as to its wisdom or necessity. (*City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 398 N.E.2d 829.) In the present case, the purpose of the ordinance in question, "to promote and protect the health and safety and welfare of the public" (Village of Morton Grove Ordinance 81-11), is certainly a proper interest for the exercise of police power. (*City of Carbondale v. Brewster*.) Furthermore, we find that the means adopted, a ban on handguns, constituted a reasonable means of promoting that interest. See *Rawlings v. Illinois Department of Law Enforcement* (1979), 73 Ill. App. 3d 267, 391 N.E.2d 758.

For the foregoing reasons, the judgment of the circuit court of Cook County upholding the validity of the Morton Grove ordinance is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.