No. 3--06--0500

_____

Filed May 16, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| LARRY HILAND, | ) | Appeal from the Circuit Court |
| | ) | of the 9th Judicial Circuit |
| Plaintiff-Appellee, | ) | Hancock County, Illinois |
| | ) | |
| v. | ) | |
| | ) | 04--MR--8 |
| LARRY G. TRENT, Director, | ) | |
| Illinois State Police, and | ) | |
| the DEPARTMENT OF ILLINOIS | ) | |
| STATE POLICE, | ) | Honorable |
| | ) | Richard H. Gambrell |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the Opinion of the Court:

_____

Defendant, Department of Illinois State Police, denied plaintiff Larry Hiland's application for a Firearm Owners Identification (FOID) card. Co-defendant, Larry G. Trent, Director of the Illinois State Police, denied Hiland relief from that decision. Hiland filed an action for administrative review in the circuit court. The circuit court reversed the Director's decision. We affirm the circuit court.

BACKGROUND

In 1988, Hiland was convicted of several federal crimes, including multiple counts of mail fraud and one count of conspiracy to commit mail fraud. At the time of his convictions, Hiland was

a registered firearm owner and possessed a FOID card.

In 1989, the Department informed Hiland that he was no longer eligible to possess a FOID card because of his convictions. Pursuant to the Firearm Owners Identification Card Act (Act) (430 ILCS 65/10(c) (West 1988)), Hiland requested a hearing with the Director to seek reissuance of his FOID card.

At the hearing, Hiland testified that he had been married for 29 years and had two grown children. He explained that in the early 1980s he was president of a pharmaceutical company, and part of his job was to approve products to add to the company's product line. In 1983, the executive vice president of operations for the company suggested that he add Vitamin E I.V. to the product line. That vice president, who was in charge of FDA regulations, and the president of the company that manufactured the drug told him that he did not have to obtain New Drug Approval from the FDA because the drug was not new. Based on that information, Hiland introduced the drug to the market without FDA approval. The drug was used by neonatal centers to prevent blindness in premature babies.

Approximately four months after introducing the drug to market, Hiland and his company were notified that the drug was causing babies to die. Hiland immediately discontinued the sale of the product. The Justice Department conducted an investigation, and determined that Hiland should have obtained New Drug Approval from the FDA. In 1988, Hiland was indicted for his role in

2

introducing the drug to the market without FDA approval. Following a trial, he was convicted. He was required to pay a $65,000 fine and spend six months in a halfway house. He also performed over 800 hours of community service. Hiland testified that he "feel[s] terrible about the incident."

Hiland introduced several character reference letters on his behalf at the hearing. The authors of those letters described Hiland as honest, reliable, caring, sensible, responsible and possessing good judgment. The pastor of the church that Hiland attends stated that Hiland's "'character' is beyond reproach." A letter from Hiland's former probation officer stated as follows:

> "Mr. Hiland has made a very positive adjustment to supervision and is not perceived as being a threat to himself or the community. He has no history of violence in his past and I can see no reason why his rights to own and possess a firearm should not be restored as long as he meets all the filing requirements of your agency."

Following the hearing, the hearing officer recommended that Hiland be issued a FOID card because he "would not be likely to act in a manner dangerous to the public safety, nor would the granting of relief be contrary to public interest." The deputy director agreed and granted Hiland a FOID card. At that time, the deputy director cautioned Hiland that he was not relieved of any

3

disability imposed under the Federal Gun Control Act of 1968 (18 U.S.C. §921 et seq. (1988)) and recommended that Hiland seek relief from the federal law by contacting the appropriate federal authorities. Hiland did not follow up with federal authorities.

In 1997, Hiland's FOID card expired, and he filed an application for a new one. That application was granted. In 2002, Hiland again filed an application for a FOID card. The Department informed Hiland that his application was denied because of his 1988 convictions. Hiland requested a hearing pursuant to section 10(c) of the Act (430 ILCS 65/10(c) (West 2002)).

A hearing was held in 2003. The evidence at that hearing established that Hiland had not been charged or convicted of any crimes since 1988. Hiland was very remorseful for his actions that led to his criminal convictions, stating "I'm sorry for everything that has happened." Hiland testified that he was seeking a FOID card so that he could hunt on his own property. All of the information and documents from Hiland's previous hearing, including the character reference letters, were admitted into evidence at the 2003 hearing.

After the 2003 hearing, the administrative law judge concluded that Hiland had not committed a forcible felony within 20 years and that Hiland's criminal history and reputation were such that he was not likely to act in a dangerous manner. However, the ALJ found that granting Hiland a FOID card "would be contrary to the public

4

interest as Section 8(n) of the FOID Card Act (430 ILCS 65/8(n)) prohibits the issuance of a FOID Card to an individual who is prohibited from possessing firearms or ammunition under federal law." The Director adopted the ALJ's findings and recommendations and denied Hiland's application for a FOID card.

Hiland appealed the Director's decision to the circuit court. The circuit court reversed the denial, holding that the Director abused his discretion by denying Hiland's FOID card application.

ANALYSIS

On appeal, defendants argue that the Director properly denied Hiland a FOID card because Hiland's federal criminal convictions prevented him from possessing a firearm under federal law.

The Director's decision to deny Hiland a FOID card will be reviewed for an abuse of discretion. See Rawlings v. Illinois Department of Law Enforcement, 73 Ill. App. 3d 267, 391 N.E.2d 758 (1979). An abuse of discretion will be found where a decision is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." People v. Ortega, 309 Ill. 2d 354, 808 N.E.2d 496 (2004). Where a decision is based on a misinterpretation of the applicable law, it is an abuse of discretion. See Mid-America Television Co. v. Peoria Housing Authority, 93 Ill. App. 3d 314, 417 N.E.2d 210 (1981).

Pursuant to section 8 of the Act, the Department has authority to deny an application for a FOID card if the Department finds,

5

among other things, that the applicant is prohibited from acquiring or possessing a firearm by state or federal law. 430 ILCS 65/8(n) (West 2002). Section 10 of the Act allows an applicant who has been denied a FOID card pursuant to section 8 to apply to the Director for relief. 430 ILCS 65/10(c) (West 2002). The Director may grant a FOID card to the applicant if he establishes that (1) he has not been convicted of a forcible felony within 20 years, (2) the circumstances surrounding his criminal conviction, criminal history and reputation are such that he will not be likely to act in a manner dangerous to public safety, and (3) granting relief would not be contrary to the public interest. 430 ILCS 65/10(c) (West 2002). Read together, sections 8 and 10 "indicate a legislative intent that the Department have authority, in extraordinary cases, to grant a license to persons who have established their fitness to possess a gun, even though belonging to one of the enumerated classes." Rawlings, 73 Ill. App. 3d at 276, 391 N.E.2d at 764.

In denying Hiland relief, the Director found that Hiland had satisfied the first two conditions of section 10(c). Nevertheless, he found that Hiland had not satisfied the public interest prong of the Act because section 8(n) "prohibits the issuance of a FOID Card to an individual who is prohibited from possessing firearms or

ammunition under federal law."[1]

However, section 8(n) does not "prohibit" the Department from issuing a FOID card to an individual precluded from possessing firearms under federal law; it only gives the Department the authority to deny an application for that reason. See 430 ILCS 65/8(n) (West 2004). As we have previously stated, section 8 must be read together with section 10(c), which allows the Director to grant FOID cards "to persons who have established their fitness to possess a gun, even though belonging to one of the enumerated classes." Rawlings, 73 Ill. App. 3d at 276, 391 N.E.2d at 764.

Here, the Director found that it would be contrary to public policy to grant Hiland a FOID card solely because he belonged to one of the classes enumerated in section 8, i.e., those prohibited from possessing firearms under federal law. By not exercising the discretion granted to him in section 10(c), the Director ignored

---

[1] Section 922(g)(1) of the Federal Gun Control Act of 1968 makes it unlawful, under federal law, for a convicted felon to possess a firearm. 18 U.S.C. §922(g)(1) (2004). Mail fraud and conspiracy to commit mail fraud are felonies that preclude gun ownership under section 922(g)(1) of the Federal Gun Control Act. See Dreher v. United States, 115 F. 2d 330, 334 (5th Cir. 1997). Section 925(c) of the Federal Gun Control Act permits individuals who are prohibited from gun ownership under section 922(g)(1) to apply to the Secretary of Treasury for relief. 18 U.S.C. §925(c) (2000). However, Congress has suspended funding to review individual requests filed pursuant to section 925(c). See United States v. McGill, 74 F.3d 64, 67 (5th Cir. 1996). Thus, an individual disqualified from gun ownership under section 922(g)(1) of the Federal Gun Control Act has no avenue for relief from that disqualification. See McGill, 74 F.2d at 67.

the overwhelming evidence establishing that defendant Hiland has been a law-abiding citizen and productive member of his community since his convictions. Based on the evidence, we agree with the trial court that the Director's decision to deny Hiland's application was an abuse of discretion.

The judgment of the circuit court of Hancock County is affirmed.

Affirmed.

CARTER and HOLDRIDGE, JJ., concurring.

8