THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR HENIGAN, a/k/a Jeff R. Graig, Defendant-Appellant.

First District (2nd Division)   No. 85—0334

Opinion filed July 29, 1986.

James J. Doherty, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Following a bench trial, defendant, Victor Henigan, was convicted

of unlawful use of firearms by a felon (Ill. Rev. Stat. 1983, ch. 38, par. 24—1.1), and was sentenced to a term of two years' incarceration. On appeal, he contends that section 24—1.1(a) of the Criminal Code of 1961, under which he was convicted, is an unconstitutional deprivation of his right to due process and that his conviction should be reversed because the State failed to prove the *corpus delicti aliunde* his statement.[1]

Officer Dennis Keane testified that on September 15, 1984, at 3 p.m. Assistant State's Attorney Alexander Vroustouris advised defendant of his *Miranda* rights and defendant signed a written statement involving a shooting which had occurred on July 7, 1984. Officer Keane added that defendant had not been threatened.

The testimony of Melvin Thompson and Jerry Bradly was substantially similar. Thompson testified that during the early morning hours on July 7, 1984, he sat on a truck in a vacant lot located near 16th Street between Drake and Central Park in Chicago. Several other persons were there including Jerry Bradly, "Little Frank," defendant and the victim. After an argument between the victim and "Little Frank" evolved into a physical altercation, defendant interceded and admonished the victim, who had been the aggressor. Then defendant and the victim argued and Thompson restrained the two men. Next, the victim drove away in his car, but returned within five minutes, cursed defendant, "popped a blade," thrust the weapon at defendant and pricked him in the neck with it. Defendant withdrew and "Little Frank" attempted to stop the attack, but the victim continued to menace defendant with the knife. A pistol then appeared in defendant's hand, and he fired it twice then fled.

Defendant testified that in the early morning hours of July 7, 1984, he was in the vacant lot with Melvin Thompson, Jerry Bradly, "Little Frank" and the victim. When the victim threatened "Little Frank" during an argument, defendant interceded. The victim then entered his car, returned with a knife and cut defendant's throat. Defendant then took a gun from "Little Frank," shot the victim twice, dropped the weapon and fled. He was arrested on September 14, 1984, for murder but was not charged with that offense. When he was questioned by police officers, he signed a written statement.

Defendant denied that he had told law-enforcement officials that he had purchased the weapon for $25, that he had violated his parole

---

[1]We note that defendant's statement is not included in the common law record, but a copy of it appears in the State's brief. That statement indicates that defendant had bought the gun and was carrying it when the incident occurred.

by carrying the gun, or that the gun had been registered. Defendant also stated that he did not know "Little Frank's" whereabouts.

Assistant State's Attorney Alexander Vroustouris testified that on September 15, 1984, he took a statement from defendant regarding the shooting. No promises or threats were made to defendant by Vroustouris or Officer Keane, who was present when the statement was made and who also signed it. Defendant signed a written waiver of his *Miranda* rights.

In surrebuttal Officer Keane testified that he recorded defendant's oral statement and was present when defendant made his written statement. According to the officer the statements were similar. Officer Keane's report did not indicate that defendant purchased the gun months before the incident, the source of the gun, how defendant brought the weapon to the vacant lot, or defendant's statement regarding the length of time between the victim's departure from the lot and return with the knife.

■■■ We shall now consider defendant's contention that the statute prohibiting the knowing possession of a firearm by a felon is an unconstitutional, arbitrary and unreasonable exercise of the State's police power which violates defendant's right to due process by depriving him of his affirmative defenses of necessity and self-defense. The relevant portion of section 24—1.1(a) is as follows:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24—1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Department of State Police." (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1(a).)

It is well settled that the penalty to be attached to criminal behavior is a matter for the legislature, and that its determination of whether an evil exists and the means adapted to deal with it will not be interfered with unless they are clearly in violation of some constitutional limitation. (*People v. Lampkins* (1975), 28 Ill. App. 3d 246, 328 N.E.2d 100.) When the legislature intends a provision to constitute an affirmative defense to a crime, it has identified it as such. The affirmative defense of self-defense may be raised when evidence is presented that unlawful force was threatened against the defendant. (*People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290; Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) The elements of the affirmative defense of necessity are: (1) that the person claiming the defense was

without blame in occasioning or developing the situation; and (2) that this person reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct. (*People v. Perez* (1981), 97 Ill. App. 3d 278, 422 N.E.2d 945; Ill. Rev. Stat. 1985, ch. 38, par. 7—13.) While the Illinois Constitution grants the individual the right to bear arms, this right is limited by the State's police power. *Rawlings v. Department of Law Enforcement* (1979), 73 Ill. App. 3d 267, 391 N.E.2d 758.

■ We cannot conclude that there is any merit to defendant's claim that section 24—1.1(a) unconstitutionally violates his right to raise the affirmative defenses of necessity and self-defense. Self-defense may be raised when evidence is presented that defendant reasonably believed that imminent danger existed, and that the kind and amount of force he used was necessary to avert that danger. (See *People v. Zolidis* (1983), 115 Ill. App. 3d 669, 450 N.E.2d 1290.) Necessity may be asserted when defendant claims that he did not cause the situation and that he reasonably believed that his conduct was necessary to avoid a greater injury than that which might reasonably have resulted from his conduct. (See *People v. Perez* (1981), 97 Ill. App. 3d 278, 422 N.E.2d 945.) According to defendant, he was arrested for the offense of murder. However, because of the circumstances of the shooting, defendant was not charged with that offense and his conduct was found to be justifiable based on the affirmative defense of self-defense. Further, the trial court parenthetically found that defendant's shooting of the victim was justified and that defendant acted in self-defense. Thus, defendant was not precluded from raising the affirmative defense to a charge it may properly be used to rebut.

■ Neither self-defense nor necessity, however, may be raised against the charge of knowing possession of a firearm by a felon, where as here, defendant told police he was carrying the gun that night before the fight occurred. The restriction against felons is a reasonable exercise of the State's police power to protect its citizens by keeping firearms out of the hands of convicted felons. (See *Rawlings v. Department of Law Enforcement* (1979), 73 Ill. App. 3d 267, 391 N.E.2d 758; *People v. Taylor* (1975), 31 Ill. App. 3d 20, 332 N.E.2d 735.) Also, the statute provides a procedure by which a felon may be exempted from the possessory offense. Therefore, we cannot conclude that there is any merit to defendant's contention.

■ Defendant also maintains that his conviction should be reversed because the State failed to prove the *corpus delicti aliunde* his

statement. Decisions in this State have recognized that a confession alone is not sufficient to sustain a conviction. Other evidence which merely tends to show the commission of the crime, however, is sufficient when coupled with a confession, to allow a conviction. "Other evidence," which is satisfactory, need not even link defendant to the offense. (*People v. Norcutt* (1970), 44 Ill. 2d 256, 255 N.E.2d 442.) Here, the evidence showed that an offense was committed and that defendant committed it. Not only did defendant admit carrying a gun on the date of the shooting, but the testimony of the two eyewitnesses to the shooting showed that defendant had a gun.

Further while defendant testified that he informed the law-enforcement officials that he shot the victim, defendant did not tell them that he obtained the weapon from "Little Frank" prior to the shooting. Also, defendant's statement indicated he had purchased the weapon prior to the incident and had carried it to the scene. In entering its decision, the trial court stated that the issue was one of credibility and chose to believe the evidence presented by the State rather than that of the defendant. We cannot conclude that the decision of the trial court was improper. *People v. Lampkins* (1975), 28 Ill. App. 3d 246, 328 N.E.2d 100.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and HARTMAN, JJ., concur.