THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES W. McCRIMMON, Defendant-Appellant.

Second District No. 85—0656

Opinion filed November 24, 1986.

Herbert W. Hill, of Aurora, and Ira A. Moltz, of Chicago, for appellant.

Robert Morrow, State's Attorney, of Geneva (Robert J. Biderman and Peter C. Drummond, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, James W. McCrimmon, was found guilty in a jury trial of two counts of gambling (Ill. Rev. Stat. 1983, ch. 38, par. 28—1(a)(3)), keeping a gambling place (Ill. Rev. Stat. 1983, ch. 38, par. 28—3), and three counts of unlawful use of weapons by felons (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1(a)). He was sentenced to an 18-month term of probation, with a condition that the first 90 days be served in the Kane County jail, for the unlawful-use-of-weapons-by-felons offenses, and was sentenced to concurrent 90-day jail sentences on the remaining misdemeanor gambling-related offenses.

Defendant appeals only his convictions for unlawful use of weapons by felons and raises two contentions, namely that (1) the unlawful-use-of-weapons-by-felons statute is unconstitutional as an *ex post facto* law as applied to him because the present law was not in effect when he was convicted as a felon in 1965, and (2) the trial court erred in instructing the jury on constructive possession by giving Illinois Pattern Jury Instruction, Criminal, No. 4.16 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 4.16) over his objection.

For purposes of the issues raised on appeal, we need only briefly summarize the trial testimony. On October 13, 1984, at 2 a.m., a detective of the Kane County sheriff's department and a special agent of the Illinois State Police dressed in plain clothes went to defendant's home, located just outside Aurora. Other cars were parked on the street, and they were directed by defendant where to park. They walked into the basement and purchased drinks at a bar area. They stayed approximately two hours and observed 60 or 70 persons in the basement during that time. People were playing poker and shooting craps. Defendant was seen behind the bar bringing in beer and, later, outside carrying cases of beer. No arrests were made at that time.

A search warrant for the premises was executed one week later in the early morning hours of October 20, 1984. Robert Canon, a Kane County sheriff's deputy, and Sergeant Kenneth Anderson, a Kane County detective, saw the defendant standing in the driveway with a flashlight, telling approaching cars to move on. Canon and Anderson circled the area and then drove back by the defendant's home. At that point, they both saw the defendant holding a flashlight and a chrome-plated revolver. They radioed for assistance, and, after patrol units arrived, they approached the residence.

Inside of the defendant's home, they saw gambling paraphernalia and a large amount of alcohol. Detective Anderson testified that while the defendant first denied that he had been holding a gun while standing in the driveway, he later admitted it. According to Anderson, the defendant then directed Terri Gillis, a woman who lived with the defendant, to get the gun from the bedroom. Gillis went to a closet in the bedroom and retrieved two guns. The defendant told Anderson that the chrome-plated revolver, later determined to be a Smith and Wesson .357 revolver, was the one which he had while in his driveway earlier. The other weapon was a .25 semiautomatic "target" pistol.

Kenneth Ramsey, a sergeant in the sheriff's office, testified that he was also involved in the execution of the search warrant on October 20, 1984. Ramsey corroborated Anderson's testimony concerning the admissions made by defendant and the finding of the two guns. Ramsey also testified that while Anderson and Gillis were in the other room retrieving the guns, defendant told him that he had purchased both guns.

A stipulation, which indicated that the defendant had been convicted of a felony in 1965, was read to the jury.

Theresa Gillis testified for the defense that she lived with the defendant and their two children, and on the night of October 20, 1984, she and the defendant were in bed at the time the police officers approached the house and executed the search warrant. According to Gillis, the defendant did not use the gun on that date and she purchased and owned the two guns retrieved by the officers.

George Ensminger, a cousin of the defendant, testified that he sold the .25 semiautomatic gun to Terri Gillis in January or February of 1983. Enrico Rodriquez testified that he made ivory grips for the .357 pistol for Terri Gillis, and she told him the pistol was hers.

Defendant testified, in pertinent part, that he did not have a gun while standing in his driveway on October 20, 1984. He stated that the guns belong to his girlfriend, Terri Gillis, and that he had only told the officers that there were guns in the house, not that they belonged to him.

Although defendant failed to file a post-trial motion, thereby waiving any issues raised on appeal (*People v. Wright* (1985), 111 Ill. 2d 128, 154-55, 490 N.E.2d 640), we elect to review the contentions because of the assertion that the unlawful-use-of-weapons-by-felons statute is unconstitutional as applied to defendant (see *People v. Devin* (1982), 93 Ill. 2d 326, 333, 444 N.E.2d 102) and the possibility that such a failure to file a post-trial motion may be later raised in the context of a claim of ineffective assistance of counsel under the Post-Con-

viction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*).

■■ Defendant first contends that his conviction for the offense of unlawful use of weapons by felons must be reversed because his prior felony conviction occurred in 1965, before the 1984 enactment of the present statute. He argues that application of the present statute to him under these circumstances results in an *ex post facto* law contrary to the United States and Illinois constitutions. (U.S. Const., art. I, sec. 9; Ill. Const. 1970, art. I, sec. 16.) He maintains that the present law is *ex post facto* because it makes more burdensome the punishment for a crime after its commission as it applies to events occurring in 1965 when he could possess a firearm after five years following his release from the penitentiary under the law at that time.

The unlawful-use-of-weapons-by-felons statute (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1(a)) was added as a separate offense in the Criminal Code of 1961 by Public Act No. 83—1056, effective July 1, 1984, and provides, in pertinent part, as follows:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24—1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This Section shall not apply if the person has been granted relief by the Director of the Department of Law Enforcement pursuant to Section 10 of 'An Act relating to the acquisition, possession, and transfer of firearms and firearm ammunition, to provide a penalty for the violation thereof and to make an appropriation in connection therewith', approved August 3, 1967, as amended." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1(a).)

The prior statutory provision replaced by this section provided for an enhanced penalty under the unlawful-use-of-weapons statute for "[a] person convicted of a felony under the laws of this or any other jurisdiction, who, within 5 years of release from penitentiary or within 5 years of conviction if penitentiary sentence has not been imposed." Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b).

While the constitutionality of section 24—1.1 has been challenged on several theories in other decisions and upheld (*People v. Henigan* (1986), 146 Ill. App. 3d 168, 497 N.E.2d 134; *People v. Capsel* (1986), 144 Ill. App. 3d 1057, 496 N.E.2d 10), no reported Illinois case has addressed the constitutional attack put forth here regarding the *ex post facto* application asserted by defendant. Nevertheless, numerous other States have considered and rejected arguments that similar

statutes imposing an increased penalty for possession of a firearm by a felon enacted after his original conviction for a felony, as applied, are unconstitutional as an *ex post facto* law. (*Finley v. State* (1984), 282 Ark. 146, 666 S.W.2d 701; *People v. Venegas* (1970), 10 Cal. App. 3d 814, 89 Cal. Rptr. 103; *Landers v. State* (1983), 250 Ga. 501, 299 S.E.2d 707; *State v. Williams* (La. 1978), 358 So. 2d 943; *State v. Myrick* (Me. 1981), 436 A.2d 379.) The rationale of these decisions is that the defendant is punished for a new and separate crime, not for the earlier felony committed before enactment of the statute, and the prior felony is only an element of the new crime. *People v. Venegas* (1970), 10 Cal. App. 3d 814, 89 Cal. Rptr. 103; *Landers v. State* (1983), 250 Ga. 501, 299 S.E.2d 707.

■ In Illinois, recidivist statutes have been consistently upheld as not violative of *ex post facto* constitutional provisions. (*People v. Coleman* (1986), 111 Ill. 2d 87, 488 N.E.2d 1009 (court supervision not available to DUI defendant who received supervision for same offense); *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 413 N.E.2d 1269 (prior juvenile adjudication occurring before effective date of new statute can be considered in aggravation in sentencing); *People v. McNeil* (1984), 125 Ill. App. 3d 876, 466 N.E.2d 1058 (prior convictions can be used to support natural-life sentence).) The cornerstone of the constitutional prohibitions against *ex post facto* laws is that persons have a right to fair warning of the conduct which will give rise to criminal penalties and of the punishment which the State may impose on the violators of its laws. (*People v. Coleman* (1986), 111 Ill. 2d 87, 93-94, 488 N.E.2d 1009.) *Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409, citing *Calder v. Bull* (1798), 3 U.S. (3 Dallas) 386, defined *ex post facto* legislation as that which:

"(1) makes criminal and punishable an act innocent when done; (2) aggravates a crime, or makes it greater than it was when committed; (3) increases the punishment for a crime and applies the increase to crimes committed before the enactment of the law; and (4) alters legal rules of evidence so that testimony insufficient to convict of the offense when committed would be sufficient as to that particular offense and the accused person." *Stein v. Howlett* (1972), 52 Ill. 2d 570, 584, 289 N.E.2d 409.

■ In the case at bar, the crime for which defendant is punished is not the earlier felony, but is the new and separate offense of unlawful use of weapons by felons which was in existence at the time of defendant's actions constituting its violation. Prior to his commission of the crime, defendant had fair warning of the conduct giving rise to the criminal penalty and of the punishment to be imposed. Defend-

ant's prior conviction was only an element of the offense, and only new and additional acts after enactment of the statute made the conduct an offense. There was no retroactive application of section 24–1.1(a), which was in effect on the date of the offense, and, accordingly, this statute did not constitute *ex post facto* legislation when applied to defendant.

■ Defendant's remaining contention on appeal is that the trial court erred in giving, over objection, IPI Criminal 2d No. 4.16, which instructed the jury that possession may be actual or constructive. In essence defendant argues that he was either in actual possession of the gun when seen in front of his house, as testified to by the deputies, or was not in possession of the gun at all, as he and Gillis testified. Thus, he maintains, the jurors were improperly instructed on the "nonexistent theory of constructive possession."

Defendant's argument, however, fails to consider the actual charges against him and the different theories advanced below by the State as to each of the two weapons. Defendant was separately charged and found guilty in separate verdicts of possessing the Smith and Wesson .357 revolver and the .25 semiautomatic target pistol. While the evidence of his possession of the Smith and Wesson .357 revolver may be considered as direct evidence of actual possession of that firearm, his possession of the .25 semiautomatic target pistol rested for the most part on its discovery in a bedroom in his house over which he had control, which is constructive rather than actual possession. (See *People v. Williams* (1981), 98 Ill. App. 3d 844, 847-49, 424 N.E.2d 1234.) Moreover, IPI Criminal 2d No. 4.16 defines the sharing of control over a thing which, under the facts here, was a disputed factual question in view of Gillis' testimony that she actually purchased and owned the guns and Sergeant Ramsey's testimony that defendant told him that he purchased the weapons.

Thus, IPI Criminal 2d No. 4.16 was properly given to the jury. Defendant has not raised as an issue on appeal the sufficiency of the evidence on the charge of possession of the .25 semiautomatic target pistol.

For the foregoing reasons, the judgment below appealed from is affirmed.

Affirmed.

NASH, P.J., and HOPF, J., concur.