THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD HINTON, Defendant-Appellant.

First District (4th Division)   No. 85—1497

Opinion filed November 5, 1987.

Steven Clark and Joan S. Colen, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and James Casey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant was charged by indictment with unlawful use of a firearm by a felon on December 18, 1984. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 24—1.1.) Defendant was separately charged with the armed robbery and armed violence against Ronald Roberson and Jerome Cheetam on December 16, 1984. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2, 33A—2.) The charges were consolidated for trial. At a bench trial, defendant was convicted of unlawful use of a firearm by a felon and acquitted of armed robbery and armed violence, and sentenced to an extended term of seven years in the penitentiary for unlawful use of a firearm. On appeal, defendant contends: (1) where his trial lawyers conceded that he was guilty of unlawful use of firearms by a felon and the record does not affirmatively show that he consented to this trial tactic, he was denied his constitutional right to the effective assistance of counsel and (2) the statute making it unlawful for a felon to possess a firearm sweeps too broadly in encompassing activity which is wholly innocent and, therefore, defendant says it must be declared void, since the statute bears no reasonable relationship to the interest the State seeks to protect but rather is an arbitrary exercise of the State's police power.

Chicago police officer Nathan Hamilton testified that shortly before midnight on December 18, 1984, after speaking to Roberson, he was assigned to a stakeout in the 3000 block of West Walnut, where Roberson resided. He saw defendant running from the direction of Roberson's home but he was too far away to tell if he had a gun. The officer pursued defendant in a police vehicle and during the pursuit the officer saw defendant throw a handgun into a yard. He then apprehended defendant and recovered the fully loaded handgun. During cross-examination, he testified that Roberson had told him during a telephone conversation at approximately 11 p.m. that he had received a telephone call from his girlfriend advising him that three men were coming to kill him, but Roberson did not say anything about an armed robbery.

It was established by stipulation that defendant was convicted of a felony in 1977 and was paroled on July 20, 1984.

Ronald Roberson testified that on December 16, 1984, at 8 p.m., he was at home in his basement apartment with four other persons when defendant and two other men, Billy Jackson and Joe Smith,

came to his door. He admitted them into the apartment. A few minutes later, Jackson handed defendant a pistol. Defendant then held the weapon on Roberson and told him to take all the money from his pockets. Roberson placed $48 on the dresser. Smith then took the $48 and Roberson's watch. Two nights later between 9 and 10 p.m., Roberson had a conversation with his girlfriend, Shirley O'Neal, and then talked to Officer Hamilton. Later that night he went upstairs, where he saw defendant on the next-door porch wearing a ski mask and holding a gun. Defendant ran into the street and Roberson saw police stop defendant.

Jerome Cheetam testified that on December 16, 1984, at approximately 8 p.m., he was in Roberson's apartment with several other people when defendant and two accomplices came into the apartment and went into the bedroom with Roberson. Defendant then came out holding a pistol and told the others to line up, after which one accomplice took $60 from this witness' pocket while defendant walked back and forth.

Defendant testified that he lived near Roberson. On December 15, 1984, he went to Roberson's apartment with Billy Jackson and paid $50 to Roberson for two bags of heroin. He left and used the drugs and found out they were not drugs at all but "garbage." He then returned to defendant's apartment but could not get inside. The following night, he returned to Roberson's apartment and spoke to Roberson, who had several friends present. Roberson told defendant he was lying about the drugs and his friends threw defendant out of the apartment. The next day, defendant again returned, but Roberson refused to let him inside. Thereafter defendant returned with a pistol to make Roberson give him back his money; but he did not have a ski mask on when he saw Roberson before police arrested him and recovered the gun he had discarded during the chase.

■ Defendant relies primarily on two cases in support of his argument that he was denied his constitutional right to the effective assistance of counsel. (*People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513; *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 494 N.E.2d 498.) In *People v. Hattery*, the court in a death-penalty case found that defendant was deprived of effective assistance of counsel when counsel adopted a strategy of admitting guilt during the trial portion of the case in order to mitigate punishment during the sentencing portion. For example, in opening argument, counsel explicitly told the jury, "We are not asking you to find Charles Hattery not guilty." Consistent with this statement defense counsel advanced no theory of defense, presented no defense evidence and chose not to

make a closing statement to the jury during the trial phase. (*People v. Hattery* (1985), 109 Ill. 2d 449, 458-59, 488 N.E.2d 513, 516.) In short, counsel's actions left no doubt that defendant was admitting his guilt. Describing the concession of defendant's guilt by his attorneys as unequivocal, the supreme court concluded that the trial strategy of attempting to show defendant was guilty of murder but undeserving of the death penalty was totally at odds with defendant's plea of not guilty and that without evidence that defendant consented to such a strategy, counsel's actions deprived defendant of the right of having the issue of his guilt or innocence presented to the jury as an adversarial issue, thus denying defendant his constitutional right to the effective assistance of counsel. 109 Ill. 2d at 464-65, 488 N.E.2d at 518-19.

In *People v. Calhoun*, defendant was indicted for murder and for armed robbery. Because trial counsel presented no defense to the armed robbery charges but conceded that defendant was guilty of armed robbery in his opening statement, his closing argument, and his presentation of the evidence, without any indication in the record that defendant ever agreed to concede his guilt to armed robbery, the appellate court followed *People v. Hattery* and reversed that defendant's conviction.

Also, in *People v. Woods* (1986), 151 Ill. App. 3d 687, 502 N.E.2d 1103, burglary and theft convictions were reversed following *People v. Hattery* and *People v. Calhoun*, where defense counsel abandoned the theory of innocence during closing argument. Counsel there adopted the strategy of trying to avoid conviction of the more serious offense, but conceded guilt of theft, to defendants' theory of innocence, and contradicting each defendant's trial testimony, destroying whatever credibility they had and depriving them of a defense to the charges. Under the circumstances, the appellate court concluded that a confession of guilt as to theft was tantamount to a confession of guilt as to burglary as well and that defendants were denied their right to effective assistance of counsel.

The State responds that defendant received effective assistance of counsel since the trial lawyer never conceded guilt but engaged in meaningful adversarial testing. Here, unlike *People v. Hattery*, the State argues, there was no unequivocal statement of guilt. Unlike *People v. Calhoun*, defense counsel held the State to its burden of proof, subjected the State's witnesses to cross-examination, and did not concede guilt, either explicitly or by failing to present a defense, as happened in *People v. Calhoun*.

Defendant criticizes his trial counsel because, in an opening state-

ment, he stated that following the time of the alleged armed robbery, defendant "did go back to the house with a gun." In a brief opening statement in this bench trial, the assistant public defender stated, in part:

> "It was reported two days after it supposedly happened; that Mr. Hinton made a statement telling the detectives and telling the State's Attorney that the day the armed robbery occurred, or allegedly occurred, he was at the person's house, that he was beaten up by that person, by three or four other people; that two days later, he did go back to the house with a gun to get back some money that was taken from him for some bad dope that was sold ***."

We believe it is clear that the statement of counsel is a reference to the contents of the statement allegedly made by defendant, without any admission as to the validity of such statement as to the actual criminal conduct of defendant. The statement by counsel is clearly not an admission of guilt comparable to that found in *People v. Hattery*.

Trial counsel is also criticized for posing the following question, which is found very near the end of the direct examination of defendant: "The time when you went back, after the 16th, with the pistol, why were you going there?" Defendant responded that he was going there to make Roberson give him his money. The question may be debatable as a matter of trial strategy, but we cannot agree with defendant that it is an implicit admission of his guilt by counsel. It must be remembered that defendant had given such a statement and this question may have been designed to blunt its effect by bringing it out on direct.

Defendant also criticizes the following comment made by defense counsel in a closing argument:

> "Now, the State's Attorney makes a big deal about intimidation. But, intimidation is not charged here. Maybe he did go back to the apartment to try to intimidate Mr. Roberson into giving him his money back, or good drugs or whatever. But, that's not the charge here. The charge here is one of armed robbery, based upon the credibility of the witnesses."

We also cannot consider this remark as an implicit admission of guilt on the weapons charge as defendant now claims. This is simply not a case in which defense counsel adopted a strategy of conceding defendant's guilt on a weapons charge in order to obtain an acquittal on the armed robbery charge.

The record shows that trial counsel employed the usual stratagems of cross-examination and direct defense testimony to counter

the weapons charge as well as the armed robbery charge. Officer Hamilton was cross-examined concerning his ability to observe on that evening and counsel was able to explore the somewhat helpful fact that the officer was not able to see if defendant had a weapon when he saw him initially. Ronald Roberson, who claimed to see defendant with a weapon on December 18, was also cross-examined about these events. Jerome Cheetam had no knowledge of those events and so was not cross-examined on the subject. Most importantly, defendant testified on his own behalf. While defendant made an admission of having a weapon in his possession on direct examination, such admission was not tied down to a particular date and defendant had previously made such an admission to the authorities. Defendant's cross-examination testimony leaves no doubt that he did have a weapon in his possession on December 18, when he was arrested by Officer Hamilton. Trial counsel's remark in opening argument is consistent with defendant's testimony, not contrary to it as in *People v. Calhoun* and *People v. Woods*. The record is clear that defendant gave a statement at 1:39 a.m. on December 19, 1984, to an assistant State's Attorney, as indicated by defendant's counsel in his opening argument. We cannot say that defense counsel's acknowledgment of the existence of that statement in opening argument or his comments in closing arguments constituted an admission of guilt on the weapons charge. We conclude defendant received the effective assistance of counsel.

■ Defendant next contends the statute making it unlawful for a felon to possess a firearm is unconstitutional. Defendant contends that the language of the statute sweeps too broadly by its inclusion of all individuals who have ever been convicted of a felony and proscribes the possession of items, many of which are not evil in themselves without requiring a culpable mental state, in violation of the due process provisions of the Illinois and Federal Constitutions. This argument has been rejected by this court in *People v. Crawford* (1986), 145 Ill. App. 3d 318, 322-23, 495 N.E.2d 1025, *appeal denied* (1987), 116 Ill. 2d 565. The statute has been upheld in several other decisions. (See *People v. Ryan* (1987), 117 Ill. 2d 28, 35-36, 509 N.E.2d 1001, 1003-04 (rejecting a vagueness challenge, but not deciding a substantive due process contention); *People v. Capsel* (1986), 144 Ill. App. 3d 1057, 496 N.E.2d 10 (no violation of due process, equal protection and separation of powers); *People v. Henigan* (1986), 146 Ill. App. 3d 168, 497 N.E.2d 134 (not violative of due process right to raise defenses of necessity and self-defense); *People v. McCrimmon* (1986), 150 Ill. App. 3d 112, 501 N.E.2d 334 (statute not an *ex post facto* law).) We consider *Crawford* and *Capsel* to be dispositive and

therefore reject defendant's argument.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.