**Arnold JACKSON, Petitioner.**

v.

**UNITED STATES of America, Respondent.**

Civil No. HNM–98–3128.
Criminal No. DKC–95–0349.

United States District Court,
D. Maryland.

Oct. 5, 1999.

Arnold Jackson, petitioner pro se.

Lynne Battaglia, United States Attorney for the District of Maryland, Odessa P. Jackson, Assistant United States Attorney, Greenbelt, MD, for the government.

## MEMORANDUM

MALETZ, Senior Judge.[1]

Arnold Jackson has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (1994), *amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Jackson makes the following claims in support of his petition: 1) that he is actually innocent of being an armed career criminal; thus, the enhancement should not have been applied to him; 2) that his appellate counsel was ineffective for: a) failing to pursue any

---

1. Of the United States Court of International Trade, sitting by designation.

Fourth Amendment claim, and b) failing to argue that the testimony of the government's expert was impermissible; and 3) that the government engaged in prosecutorial misconduct.

The court, after examining all of the above-mentioned claims, denies the motion.

## I. Background

On November 7, 1995, after a trial by jury, Jackson was found guilty of possessing an unregistered weapon in violation of 26 U.S.C. § 5861(d) and of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was found to be an armed career criminal within the meaning of 18 U.S.C. § 924(e) and § 4B1.4 of the United States Sentencing Guidelines, and sentenced to 262 months imprisonment followed by three years of supervised release. The Fourth Circuit affirmed his conviction and sentence on September 3, 1997. The present motion followed.

## II. Armed Career Criminal Status

Jackson first argues that he should not have been sentenced as an armed career criminal for he does not have the requisite number of underlying convictions. He maintains that his 1975 Illinois state conviction for robbery is not a conviction within the meaning of 18 U.S.C. § 921(a)(20), and therefore, cannot be used as a predicate offense for 18 U.S.C. § 924(e)(1).

The armed career criminal provision of 18 U.S.C. § 924(e)(1) provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be ... imprisoned not less than fifteen years....

In determining what constitutes a previous conviction under this provision, one must look to 18 U.S.C. § 921(a)(20) which reads:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such a pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Jackson claims that with respect to his 1975 conviction, all of his civil rights, including the right to possess a firearm, were restored in May of 1982—five years after his release from prison. Thus, he argues that the conviction cannot be used as a predicate conviction in light of the language of 18 U.S.C. § 921(a)(20). In contrast, the government argues that the Illinois statute which restored Jackson's civil rights did not include the restoration of the right to possess a firearm; therefore, the conviction was appropriately used as a predicate for sentencing Jackson as an armed career criminal.

 However, both parties fail to recognize that Jackson's civil rights were not restored in 1982. The law in 1975, regarding the loss and restoration of rights, read as follows:

On completion of sentence of imprisonment or *on a petition of a person not sentenced to imprisonment,* all license rights and privileges granted under the authority of this State which have been revoked or suspended because of conviction of an offense shall be restored....

*See* 38 ILL.COMP.STAT.ANN. 1005/5–5 (West 1982) (emphasis added) (current version at 730 ILL.COMP.STAT.ANN. 5/5–5–5 (1993)). Jackson, was sentenced to a term of probation [2]—not imprisonment—therefore, it

---

**2.** As a condition of probation, Jackson was ordered to serve six months of his probation

in a work release program, however he was never sentenced to a term of imprisonment.

was his responsibility, upon completion of his probation, to petition the court for restoration of his rights. Although the Illinois state courts have not addressed this provision of the code, the Illinois legislature has. Chapter 38 section 1005–5–5 was amended during the 86th session of the Illinois General Assembly, and the transcription of the floor debate in the House of Representatives contains the following from Representative Kirkland:

> This Bill addresses the loss and restoration of rights after you've a period of imprisonment or other punishment. And right now the law is that, after you've been incarcerated, your license whatever, license[,] rights you might have lost, automatically are returned to you ... in prison when your [sic] discharged from imprisonment. This ... would add to that automatic return of license[,] rights when your discharged from probation, conditional discharge[,] periodic imprisonment and any time thereafter [sic]. Right now for those latter three, you have to petition the court to receive those rights back ... the probation and court services people who gave me this simply think it makes more sense, and I do too. That the la[tt]er discharge also return your rights automatically.

Transcription Debate, 86th G.A. (May 12, 1989). Given this legislative pronouncement, it is clear that prior to January 1, 1990, when the statute was amended, in order for a probationer to have his rights restored, he had to petition the court. Jackson failed to do this.

■■■ Assuming, without deciding, that this amendment to 38 ILL.COMP.STAT.ANN. 1005/5–5 was retroactive, the earliest Jack-

son's rights could have been restored would be January 1, 1990, the date the provision went into effect. However, the conviction could still be used to support his armed career criminal status given the fact that in 1984 Illinois enacted a law prohibiting all convicted felons from possessing weapons, regardless of the date of conviction. *See* 38 ILL.COMP.STAT.ANN. 24–1.1 (West 1984) (current version at 720 ILL. COMP.STAT.ANN 524–1.1).[3] The Fourth Circuit has made clear that even if a defendant's civil rights are restored, if a state felon in possession statute is in effect at the time of the restoration, the underlying conviction is valid under § 921(a)(20). *See United States v. McLean*, 904 F.2d 216 (4th Cir.1990).

McLean was convicted of multiple drug offenses in North Carolina and served time in prison for those charges from June, 1983 until his release in May of 1984. *See Id.* at 217. Four years later, he was charged with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See Id.* McLean argued that his prior conviction did not prohibit him from carrying a firearm, because his right to carry had been restored through an express writing from the state. *See Id.* The notice of restoration he received from the North Carolina Parole Commission advised him of the Omnibus Crime Control and Safe Streets Act of 1968, and cautioned him that he was prohibited, under this federal statute, from "own[ing], possess[ing], receiv[ing], buy[ing], or otherwise acquir[ing] firearms of any description." *Id.* at 217–18. The United States District Court overturned McLean's conviction reasoning that the certificate warned him of the federal law,

---

The "Certified Statement of Conviction" obtained from the Circuit Court of Cook County, as well as all of the docket entries, reflect that Jackson received probation and that the work release program was merely a condition of that probation.

**3.** The Appellate Court of Illinois has held that this felon in possession statute is not violative of ex post facto constitutional provisions, be-

cause the defendant is punished for a new and separate crime, and the commission of the prior felony is only an element of that crime. Thus, the Illinois court found that the statute does not punish the defendant for the offense committed before the enactment of the statute. *See People v. McCrimmon*, 150 Ill.App.3d 112, 116, 103 Ill.Dec. 313, 501 N.E.2d 334 (1986).

but "did not amount to an express state prohibition against possessing ... firearms" as required under § 921(a)(20). *See Id.* at 218.

The Fourth Circuit reversed, and held that in determining whether a defendant's rights have been restored under § 921(a)(20), the court should look at the "whole of the state law," instead of "focusing solely on the language of the certificate." *McLean,* 904 F.2d at 218. In brief, the Fourth Circuit requires the district court to examine the state code and determine if the defendant was prohibited from possessing a firearm when his rights were restored. *See Id.* At best, Jackson's rights were restored in January of 1990, at which time Illinois law prohibited all convicted felons from possessing weapons, regardless of the date of conviction. *See* 38 ILL.COMP.STAT.ANN. 24–1.1 (West 1984). Therefore, Jackson's 1975 conviction falls squarely within the confines of § 920(a)(20).

The only distinction between *McLean* and the present case, is that Jackson relies on the operation of a statute for restoration of his rights, rather than an express writing from the state. However, this distinction only strengthens the argument against Jackson; for, if a defendant relies on a statute for the restoration of his rights, he cannot merely ignore other provisions of the state code which prohibit the possession of firearms. To allow a defendant such latitude would enable him to choose which provisions of the code to recognize and which to ignore—clearly an absurd result. The Fourth Circuit mandates that district courts look to the "whole of the state law" to determine if the defendant's restoration of rights included the right to possess a firearm, *McLean,* 904 F.2d at 218—Jackson's did not. Thus,

the 1975 conviction for robbery is a valid predicate conviction for purposes of 18 U.S.C. § 924(e).

## III. Ineffective Assistance of Counsel

 Next, Jackson claims that he was denied effective assistance of counsel. The Supreme Court has adopted a two-prong test for determining whether a defendant has received adequate assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must prove that his attorney's conduct fell below an "objective standard of reasonableness," and that such deficient performance caused him prejudice. *See id.* at 687–91, 104 S.Ct. 2052. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. According to *Strickland,* there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id.* at 688–89, 104 S.Ct. 2052.

### A. Fourth Amendment Claim

Jackson first contends that his Fourth Amendment rights were violated, and that his attorney was ineffective in failing to request a suppression hearing or to raise the issue on appeal. He argues that the police violated his Fourth Amendment right to be free from unreasonable searches and seizures when they ordered him out of his mother's home, where he was residing, and "requested or demanded the mother to retrieve the gun that petitioner had allegedly requested after being forced from home." [4] Jackson argues that

---

4. Jackson was charged with violating 18 U.S.C. § 922(g) after the police were called to his mother's home (where petitioner resided) for a domestic dispute. Upon arrival, the police were met by Genavy Jackson, the petitioner's mother, who informed the police that Jackson was threatening to shoot family members. The officers entered the home and saw Jackson and his sister engaged in a heated argument. The officers, in an attempt to diffuse the situation, told Jackson that he had to leave, and escorted him through the house to get some of his belongings. Meanwhile, Genavy Jackson told some of the officers that

the warrantless search and seizure did not fall within one of the exceptions to the warrant requirement; therefore, the weapon is the fruit of a poisonous tree and should have been suppressed.

Given this consideration, Jackson maintains that his trial attorney should have requested a suppression hearing prior to trial, and that his appellate attorney should have raised the issue on appeal. The court notes however, 1) that on October 4, 1995 a motion to suppress was, in fact, filed by Jackson's attorney, along with a request for a hearing; 2) that a hearing was held pursuant to this request; and 3) that thereafter, the motion to suppress was denied. Thus, on this score, Jackson's contention is completely refuted by the actual facts.

■ Jackson further argues that his appellate attorney should have included a Fourth Amendment argument in his brief to the Fourth Circuit. He maintains that it was a viable argument that counsel should have pursued on appeal, and that failure to pursue it amounts to ineffective assistance. The court disagrees.

■ In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the Supreme Court held that failure to raise every non-frivolous issue on appeal does not constitute ineffective assistance. As the Court noted, "A brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Id.* at 753, 103 S.Ct. 3308. Thus, it is this court's responsibility to evaluate, not the merits of the Fourth Amendment argument itself, but rather counsel's decision not to pursue that argument. *See Smith*

her son owned a gun and that she had it locked upstairs and did not want her son to have the gun. Once Jackson was removed from the home, he continued to ask the police if he could go back into the house and retrieve his belongings. When asked which belongings he intended to get, Jackson told the officers he needed his gun.

*v. State of South Carolina,* 882 F.2d 895 (4th Cir.1989).

The record reflects that counsel raised several issues on appeal. She argued: 1) that this court erred in admitting two hearsay statements and failed to charge the jury on an essential element of the crime; 2) that the defendant's motion for judgment of acquittal was wrongfully denied; and 3) that the defendant did not stipulate to his prior felony status. Unfortunately for the defendant, none of the foregoing arguments prevailed on appeal; however, this court will not, with the benefit of hindsight, second guess counsel's reasonable professional decision to pursue only certain arguments.

Furthermore, in this connection, the Fourth Amendment claim advanced by the defendant involved a question of witness credibility[5]; thus, by its nature, it was a weak argument for appeal. Appellate courts "review credibility determinations and resulting factual findings for clear error, according deference to the district court." *United States v. Murray,* 65 F.3d 1161 (4th Cir.1995). *See also e.g. United States v. Rusher,* 966 F.2d 868, 873 (1992). Therefore, in order to prevail on appeal, Jackson needed to demonstrate that the testimony at the motions hearing was not credible. *See Murray* 65 F.3d at 1169. He fails to provide this court with any evidence to sustain that burden of proof. Given this background, counsel was not deficient for failing to raise this argument on appeal.

## B. Expert Testimony

■ Next, Jackson argues that his appellate attorney was ineffective for failing to contest the use of a government expert.

Shortly after the officers left with defendant, they returned to speak with Genavy Jackson, at which time she gave the officers the gun.

5. This court determined that the defendant's mother consented to the search of her home, and voluntarily surrendered the defendant's gun to the officers on the scene.

As noted above, counsel is not required to raise every non-frivolous issue on appeal. *See Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. Furthermore, the court finds that the argument surrounding the government's expert would have been weak, if not frivolous; therefore, it was not ineffective for counsel to refuse to make such an argument.

At trial, the government called Christopher Trainor, a special agent with the Bureau of Alcohol, Tobacco & Firearms (ATF), to testify, as an expert, to the place of origin of a firearm. Although Agent Trainor had never before testified as an expert in this specific area, he had previously testified as an expert concerning the definition of firearms. Additionally, he was employed as a criminal analyst at Interpol, was trained in firearms by the ATF, and attended Interstate Commerce Nexus Expert School in Washington D .C. Based on this background, this court determined that Agent Trainor was qualified to testify as an expert for determining firearm place of origin.

Jackson, relying on *United States v. Jones,* 16 F.3d 487 (2nd Cir.1994), argues that Agent Trainor's testimony was not sufficient to establish that the firearm in question traveled in interstate commerce. In *Jones,* the defendant was charged with, among other things, possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The possession took place in New York, and an FBI agent testified that no handguns are manufactured in New York. The defendant made a motion for judgment of acquittal claiming that the government failed to prove that the firearm had traveled in interstate commerce. The district court denied the motion, citing the agent's testimony. On appeal, the defendant demonstrated that, at one time, handguns were manufactured in New York; thus, negating the inference that the handgun in question had to come from another state.

However, *Jones* is readily distinguishable from the present case. In *Jones,* the defendant provided proof of the fact that firearms were once manufactured in New York. In fact, the government conceded that firearms were manufactured in New York, and admitted that there was a "slight possibility" that the gun in question was made in New York. Furthermore, in *Jones,* the only evidence of an interstate nexus came from the testimony of the FBI agent.

The facts of the present case are much different. Agent Trainor did, in fact, testify that no "Stevens Shotguns made by Savage Industries are manufactured in the state of Maryland." However, the defendant merely alleges that this type of shotgun may have been manufactured in Maryland, but presents absolutely no evidence to support that allegation. Without evidence to the contrary, it is reasonable and permissible to infer that a shotgun found in Maryland, that is not manufactured in Maryland, traveled in interstate commerce.

Furthermore, Agent Trainor was not the only witness to testify that the gun traveled in interstate commerce. The defendant's ex-wife testified that the gun in question was in the defendant's possession when the two of them lived in Fairfax, Virginia. In view of these facts, the court finds that counsel's decision not to pursue this claim was reasonable, and not grounds for an ineffective assistance claim.

## IV. Prosecutorial Misconduct

 Finally, Jackson alleges that the government engaged in prosecutorial misconduct when the Assistant United States Attorney told the jury to "send a message," and stated that the evidence was "uncontradicted." In reviewing claims of prosecutorial misconduct, this court must determine whether the remarks so infected the trial with unfairness that the resulting conviction is in violation of due process. *See Darden v. Wainwright,* 477 U.S. 168, 180, 106 S.Ct. 2464, 91 L.Ed.2d

144 (1986). Four important factors to consider in making this determination are:

1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether the remarks were isolated or extensive; 3) absent the remarks, the strength of competent proof introduced to establish guilt of the accused; and 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*See United States v. Harrison,* 716 F.2d 1050 (4th Cir.1983). Considering these factors, this court does not believe that the remarks in question resulted in an unfair trial.

### A. "Sending a Message"

At the close of prosecutor's rebuttal argument, the following took place:

Prosecutor: And you know, ladies and gentlemen, Arnold Jackson is convicted felon; and, being a convicted felon, he is not allowed to possess firearms; and being a convicted felon, we need to tell our community, we need to tell our community to take stock. We don't need people around here not only firearms [sic], but illegal firearms at that, firearms that nobody should have.... We need to get the menace off of our streets.

Defense: Objection, Your Honor.

Court: Sustained.

Prosecutor: We need to make sure that the next time—

Defense: Objection, Your Honor.

Court: That will be sustained. Proceed.

Prosecutor: We need to send that message, ladies and gentlemen.

Court: That will be stricken.

Prosecutor: I ask you to look at everything in front of you, all the testimony you have, the uncontradicted testimony, and come back—

Defense: Your Honor, I would object to that, too.

Court: Overruled. Proceed.

Tr. 34–35.

The Fourth Circuit has determined that it is inappropriate for prosecutors to urge juries to "make a statement," because it suggests that jurors should convict, not based on what the defendant has done, but for the purpose of preventing future crime. *See United States v. Pupo,* 841 F.2d 1235 (4th Cir.1988). The prosecutor in *Pupo* urged the jury to "make a statement so that we can address these types of conspiracies that are taking place in our communities." *Id.* at 1240. However, even though the Court recognized that the remark was improper, it upheld the conviction, finding that the statement was isolated and not deliberately made. *See Id.*

Here, as in *Pupo,* the remarks were isolated, and there is nothing in the record to suggest that they were deliberately made to divert the jury's attention to extraneous matters. Moreover, unlike the *Pupo* case, this court ordered the inappropriate language stricken from the record. Finally, the evidence against Jackson was overwhelming, and included testimony from the arresting police officer that the defendant, upon being removed from his home, asked the officer if he could go back inside to retrieve his gun. In view of these facts, this court finds that these isolated remarks—albeit improper—did not amount to a denial of due process.

### B. Uncontradicted Evidence

Finally, Jackson contends that the prosecutor infringed upon his right against self-incrimination. Several times throughout her closing, the prosecutor referred to the evidence as "uncontradicted." This, the defendant argues, amounted to a violation of his Fifth Amendment right.

The Supreme Court has long held that it is a violation of a defendant's Fifth Amendment right for a prosecutor to comment on the defendant's silence. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The

Fourth Circuit, in *United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), announced a rule for determining whether a prosecutor's remarks constitute improper comment on a defendant's failure to testify. The rule provides:

> Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?

*Id. See also United States v. Francis,* 82 F.3d 77, 78 (4th Cir.1996); *United States v. Percy,* 765 F.2d 1199, 1204–05 (4th Cir. 1985); *United States v. Whitehead,* 618 F.2d 523, 527 (4th Cir.1980). Applying this rule, the court determines that the prosecutor's remarks were not intended as a comment on the defendant's failure to testify, nor did they send such a message to the jury.

The facts in *Francis* are almost identical to the facts of this case. There, as here, the prosecutor described the evidence as "uncontradicted," and the court did not give a curative instruction. 82 F.3d at 78. However, in both cases, the trial judges gave the standard charge, instructing the jury not to draw any adverse inference from the defendant's decision not to testify. *See id.* Furthermore, in both cases, the defense case rested on the alleged inconsistencies of the government's witnesses. *See id.* In fact, in the present case, the prosecutor did not use the term "uncontradicted evidence" until rebuttal, after defense counsel had attacked the testimony of the government witnesses. In *Francis,* the Court held:

> Indeed the prosecutor's comment here was manifestly intended to refer not to the defendant's decision to remain silent, but, rather, to the inconsistencies in testimony between the two prosecution witnesses, which was alleged to exist by the

defense—a fact confirmed by the prosecutor's subsequent rebuttal argument.

82 F.3d at 78.

Considering the similarity in facts as outlined above, the Court's reasoning in *Francis* applies, with equal force, to the case at bar. Moreover, in *Gaskins v. McKellar,* 916 F.2d 941 (4th Cir.1990), the Court found that the prosecutor's assessment that certain evidence was "undisputed," was not violative of the Fifth Amendment, because the defendant could have contradicted the evidence with testimony from individuals, other than himself. Thus, the court held, that the remarks did not suggest that the jury draw an adverse inference from the defendant's silence. The same holds true in the instant case. Jackson could have contradicted the testimony of government witnesses with testimony from either his mother or sister, both of whom were present at the time of his arrest.[6] Therefore, the defendant's Fifth Amendment rights were not violated.

For the foregoing reasons, the motion is denied.

## ORDER

For the reasons set forth in the accompanying memorandum, it is ordered this *5th* day of October, 1999:

1) that the request for appointment of counsel and discovery be denied;

2) that the request for an evidentiary hearing be denied;

3) that the motion to vacate, set aside or correct sentence be denied; and

4) that a copy of this memorandum and order be sent to the parties.

---

**6.** The uncontradicted evidence the prosecutor referred to was the testimony of the arresting officer who testified that the defendant told him he wanted to retrieve his gun from his house before being forced to leave his home.