**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Milton A. WALDEN, Defendant– Appellant.**

**No. 97–1940.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1997.

Decided June 10, 1998.

K. Tate Chambers (argued), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before ESCHBACH, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

At about 11:15 PM, on Interstate 155 near Hopedale, Illinois, State Police Trooper Ricky Jackson stopped the Chevrolet El Camino Milton Walden and Colleen Watkins were riding in because it had a defective left taillight. Watkins was driving; Walden was asleep in the passenger seat. Walden's ten-year-old son Jesse was riding in the center of the seat. None of the occupants of the car were wearing seatbelts. Officer Jackson asked Watkins for her driver's license, proof of insurance, and vehicle registration, and asked Walden for his driver's license. Watkins handed Jackson her license and registration, and Walden gave Jackson a traffic citation in lieu of his driver's license.

Officer Jackson returned Watkins's registration, and took her driver's license and Walden's citation back to his squad car. Jackson then had a computerized license check run on both Watkins and Walden before he began writing citations. The check on Walden revealed that he had a previous arrest in 1994 for unlawful use of weapons, and an undated arrest for armed robbery.[1] The check also produced an "officer safety alert" regarding Walden, indicating that Walden was involved in gang activity and should be considered armed and dangerous. After receiving the safety alert Jackson became suspicious that Walden might have a gun in the truck, and requested backup from his dispatcher. Jackson requested backup because he was going to ask to search the vehicle and was concerned for his safety. Officer Jackson then wrote up tickets for both Walden and Watkins for seat belt violations, and wrote a warning for Watkins about the taillight.

About fifteen minutes had elapsed and Jackson returned to the El Camino and asked Watkins to come back to the squad car with him. Once Watkins was inside the police car, Officer Jackson began to question her. He asked her if she was wearing a seat belt, then asked if she had an insurance card. She indicated that she did, but that it was not in the truck. Officer Jackson then told

Watkins that he was going to give her a ticket for the seat belt violation and a warning for the taillight. He then handed Watkins her citations.

Officer Jackson then asked Watkins how she was acquainted with Walden. She told him that he was her fiancee and that he lived with her. Jackson then stated that he had run a license check on Walden and that he had learned of problems in the past involving guns. He asked her if she was aware that Walden was known to carry weapons. She stated that she was aware. Officer Jackson told her that he was concerned that there might be a gun in the truck, and she replied that there was a gun in the truck, but that it was hers. She showed the officer her FOID card. Jackson asked her why she was carrying a gun, and she stated that she worked late hours at a bar in Decatur, and was concerned for her safety. The officer asked her what kind of gun it was, and where it was located. She told him that it was a .380, and that it was located under the passenger side seat of the truck. Officer Jackson told Watkins to stay in the squad car while he went to get the gun. The backup officers had arrived while Jackson questioned Watkins in the police car.

When Jackson approached the vehicle he told Walden and his child to get out of the truck. He put Walden's hands on the truck and began a pat down search. Jackson felt a hard object in Walden's right armpit. He moved back a loose shirt, and saw that it was a shoulder holster. Jackson found two clips of ammunition in pouches attached to the holster, but there was no gun in the holster. Officer Jackson next searched the truck, and found an unloaded .380 handgun and another clip of ammunition on the floor under the passenger seat. After retrieving the gun, Jackson arrested Walden.

An indictment was returned against Walden charging him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). Walden filed a motion to suppress the firearm and ammunition evidence, and a hearing was held on July

---

**1.** Officer Jackson testified that the information he received referred to arrests. In fact, Walden had been convicted for the armed robbery in 1975, and for being a felon in possession of a firearm in 1994. He also had three 1975 convictions for burglary.

25, 1996, at which Watkins and Officer Jackson testified. At the close of the hearing, Judge Mihm orally denied the motion. Afterwards, Walden pleaded guilty, reserving his right to appeal the denial of his motion to suppress.

Walden received an enhanced sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). Walden's qualifying felonies were an armed

robbery conviction, and three burglary convictions, all of which were from 1975, when Walden was 17 years old. The judge sentenced Walden to the mandatory minimum 180–month sentence under § 924(e).[2] Walden appeals, challenging the denial of the motion to suppress, and the enhanced sentence under the Armed Career Criminal Act.

### I. Fourth Amendment Claim

■ Walden argues that the officer exceeded the permissible scope of a traffic stop by questioning Watkins about matters unrelated to the traffic offense without reasonable suspicion to do so. When reviewing a motion to suppress, questions of law are reviewed de novo and questions of fact are reviewed for clear error. *See United States v. Liss*, 103 F.3d 617, 620 (7th Cir.1997). Determinations of reasonable suspicion and probable cause to search or seize are reviewed de novo. *See Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is governed by the principles established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Under *Terry*, a police officer may perform an investigative stop when there is reasonable suspicion, based on specific and articulable facts, that "criminal activity may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. 1868. Whether or not there is reasonable suspicion is determined based on the totality of the circumstances. *See United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Jerez*, 108 F.3d 684, 693 (7th Cir.1997).

■ The scope and duration of a traffic stop are limited to what is necessary to fulfill the purpose of the seizure. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality); *United States v. Finke*, 85 F.3d 1275, 1278 (7th Cir.1996); *United States v. Rivera*, 906 F.2d 319, 321 (1990). "The scope of the detention must be carefully tailored to its underlying justification." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319. However, when there is reasonable suspicion that the occupants of a vehicle are engaged in other illegal activity, an officer may prolong a traffic stop to investigate that activity. *Finke*, 85 F.3d at 1275. Walden does not contest the validity of the initial stop, or the license check. Moreover, from the record, it is clear that Officer Jackson had probable cause to search the vehicle and its occupants after Watkins told the officer that there was a gun in the car. Thus, the issue becomes whether the suspicion that led Officer Jackson to begin the investigation was reasonable.

The basis for Officer Jackson's suspicion was the result of the license check. Jackson did not identify other facts that aroused his suspicion, and he indicated that Walden was not acting suspiciously during the stop. The background check indicated that Walden "had a previous arrest for armed robbery and ... an arrest in '94 for unlawful use of weapons." The background check also contained the "officer safety alert" indicating that Walden was involved in "gang crime activity." Walden contends that the information returned in the license check did not provide reasonable suspicion to investigate illegal activity beyond the traffic violations.

■ Reasonable suspicion of criminal activity cannot be based solely on a person's prior criminal record. *See Jerez*, 108 F.3d at

---

**2.** If Walden does not fall under the Armed Career Criminal Act, his guideline range would be 10–16 months.

693. On the other hand, a criminal record in conjunction with other information can form the basis of a reasonable suspicion. *See United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir.), *cert. denied*, 516 U.S. 853, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995). In this case, that "other information" included an "officer safety alert." Officer Jackson testified as follows about the alert:

Q: What is [an officer safety alert]?

A: It's an alert system built into our computer system when we're dealing with any type of individual that's known to be involved in gang crime activity and it's basically just for the officer's safety so he can be aware of the possibility of who he is dealing with.

Q: Tell us how you received any information and what you received with regard to that as well as the prior criminal record.

A: When I ran his name, or had the dispatcher run his name, she come back and give me this information of the officer safety alert [sic]. And I'm not to arrest or detain based solely on this information, but he is known to be involved in gang crime activity, but there's also a section for armed and dangerous listed on that gang activity alert.

■ Transcript at 35–36, *United States v. Walden*, No. 96–10021 (C.D.Ill. July 25, 1996). The key to the reasonable suspicion question in this case is whether the officer safety alert adds anything different than the prior criminal record. Taken together, an officer with information that Walden was involved in "gang crime activity" and was "armed and dangerous" could certainly believe that Walden posed a potential threat to him. It is eminently reasonable for an officer to suspect that an "armed and dangerous" person would have a weapon. After all, the whole point of the "frisk" in a *Terry* stop and frisk, is to dispel the possibility that a potentially dangerous person might have a weapon. Officer Jackson reasonably feared that Walden might react unpredictably when he went to serve the seatbelt citation on Walden. There was no Fourth Amendment violation and Walden's motion to suppress was properly denied.

## II. Armed Career Criminal Sentence Enhancement

We now turn to Walden's second contention, that his sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e), should be vacated because his civil rights were restored from his previous felony convictions, and thus the previous convictions do not qualify as predicate convictions under the act. Walden asks that this court reevaluate its prior holdings in *Melvin v. United States*, 78 F.3d 327 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 384, 136 L.Ed.2d 301 (1996), and *United States v. Erwin*, 902 F.2d 510 (7th Cir.1990), in order to grant him relief.

Under § 924(e), any defendant who has three qualifying prior violent felony convictions must be sentenced to a mandatory fifteen-year minimum sentence. 18 U.S.C. § 921(a)(20) defines which felony convictions qualify as prior convictions for purposes of § 924(e):

What constitutes a conviction of [a felony] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside, or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

In the § 922(g)(1) context, this circuit determines whether a person is convicted within the meaning of the first sentence of the statute by determining whether a person would be considered convicted for purposes of the convicting state's "felon in possession" statute. *See Melvin*, 78 F.3d at 329. We have interpreted the second sentence of the statute to mean that "[i]f the state sends the felon a piece of paper implying that he is no longer 'convicted' and that all civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution." *Erwin*, 902 F.2d at 512–13. If the felon did not receive a document restoring his civil rights, "the question becomes whether the particular civil

right to carry guns has been restored by law." *Id.* at 513.

The question whether Illinois would consider Walden "convicted" for purposes of its felon in possession statute is more than hypothetical: Walden was convicted under that statute in 1994. Thus, Walden's prior convictions qualify as predicate convictions under the federal statute unless Walden's civil rights were restored after the convictions. Because Walden did not receive any document which was a pardon or restoration of all his civil rights, the next question is whether Walden's right to carry a gun has been restored under Illinois law.

■ Illinois tightened its law forbidding felons from carrying firearms in 1984, between the time Walden was released from prison on his 1970s felony convictions and the time of the instant conviction. Prior to 1984, the law of Illinois permitted a convicted felon to possess weapons five years after release from jail. *See* Ill.Rev.Stat. ch. 38, para. 24–3.1 (1979). Since 1984, Illinois law has stated that no felon may possess a weapon, regardless of the date of the conviction, unless the Director of the State Police allows the felon to do so. *See* 720 ILCS 5/24–1.1(a). Illinois caselaw holds that the post–1984 version applies to all felons, regardless of whether their convictions were before or after 1984. *See People v. McCrimmon,* 150 Ill.App.3d 112, 103 Ill.Dec. 313, 501 N.E.2d 334, 337 (1986) (upholding conviction under the post–1984 statute for felon who was convicted in 1965). Illinois had not restored Walden's right to possess a gun at the time of his arrest in 1992. Thus, under the law of this circuit, Walden's four 1975 convictions can serve as predicate offenses under § 924(e). *See Melvin,* 78 F.3d at 329–30. We see no reason to reevaluate our reasoning in *Melvin.*

The judgment of conviction and sentence of Milton A. Walden are AFFIRMED.