## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 11-3707

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL ADAMS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 11-10037-001—**James E. Shadid**, *Chief Judge*.

ARGUED SEPTEMBER 20, 2012—DECIDED OCTOBER 19, 2012

Before EASTERBROOK, *Chief Judge*, and MANION and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Federal law makes it a crime for a felon to possess a firearm that has traveled in interstate commerce, 18 U.S.C. §922(g), and Michael Adams has been convicted of violating that statute. He was sentenced to 15 years' imprisonment as an armed career criminal, see 18 U.S.C. §924(e), after the district court concluded that four of his earlier convictions

were for "violent felonies" punishable by a year or more in prison. Adams concedes that two of the four qualify but contends that the other two do not, given 18 U.S.C. §921(a)(20), which provides that a restoration of civil rights causes a conviction to be disregarded for federal felon-in-possession statutes. Treatment as an armed career criminal depends on three qualifying prior felony convictions, and Adams contends that he should be resentenced without the enhancement under §924(e).

The two convictions on which Adams maintains that his civil rights have been restored arose from robberies in 1981 and 1982. He was sentenced by an Illinois court to 180 days in jail plus three years' probation for the 1981 armed robbery; he committed the second robbery while on probation from the first. That crime led to the revocation of his probation plus new convictions for robbery and aggravated battery. His total sentence was four years in prison; he was paroled on August 20, 1984. He promptly violated the terms of his parole, leading to its revocation. He was re-paroled in December 1984 and committed another armed robbery in January 1985. This time the court sentenced him to 25 years in prison. While confined, Adams committed his fourth violent felony: aggravated battery of a guard. He had not been out for long when he was caught with a firearm, leading to this federal conviction.

In 1981 and 1982 Illinois law provided that felons lost their right to possess firearms for the duration of their confinement plus five years (or for five years from the date of conviction, if the sentence did not include incar-

ceration). 38 Ill. Rev. Stat. ¶¶ 24–1(b), 24–3.1 (1975 ed.). Had these laws remained in force, Adams could have regained his right to possess firearms on August 20, 1989. Illinois automatically restores other civil rights, including the rights to vote and hold public office, following release from prison. A blanket restoration of all civil rights, including the right to possess firearms, means that the state conviction no longer establishes a federal firearms disability. Section 921(a)(20) provides:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> > (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
> >
> > (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

This language was designed to provide a comprehensive definition but has been troublesome in practice, given the many different state approaches to the restoration of civil rights. See, e.g., *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (en banc); *United States v. Burnett*, 641 F.3d 894 (7th Cir. 2011); *United States v. Logan*, 453 F.3d 804 (7th Cir. 2006), affirmed, 552 U.S. 23 (2007). The problem in this case stems from the fact that Illinois changed its law after Adams was convicted of the crimes he committed in 1981 and 1982.

In 1984 Illinois repealed the statutes that had allowed criminals to possess firearms beginning five years after their release from prison. Since July 1, 1984, when the repeal took effect, a felon may possess firearms lawfully only after receiving express permission from the Director of the Illinois State Police. 720 ILCS 5/24–1.1(a). The state judiciary has held that the 1984 legislation applies to persons whose convictions predate it. *People v. McCrimmon*, 150 Ill. App. 3d 112, 115–16 (2d Dist. 1986). Adams did not seek the Director's permission. As a matter of state law, then, his civil right to possess firearms has not been restored, and §921(a)(20) counts the 1981 and 1982 convictions. So we held in *Melvin v. United States*, 78 F.3d 327 (7th Cir. 1996), and *United States v. Walden*, 146 F.3d 487 (7th Cir. 1998). Both of those decisions reject the argument that applying the 1984 legislation to pre-1984 convictions is impermissibly retroactive.

This case shows why. Under the older law, Adams would have regained his right to possess firearms five years after his release from prison had he avoided com-

mitting new crimes. But even before his release in August 1984 the law had been changed. Thus when 1989 arrived Adams did not regain a right to possess firearms. It is not as if Illinois had restored that right (vaporizing the conviction for the purpose of §921(a)(20)) and then taken it away again. We could understand an argument that, as a matter of federal law, a conviction that ceases to count under §921(a)(20), say because the felon is pardoned, is not restored to "conviction" status when state law changes. But Adams's convictions have counted *continuously*, because Illinois law changed long before August 20, 1989. And that's not all. When August 20, 1989, arrived, Adams was in prison again. His right to possess firearms would not have been restored even under the pre-1984 version of Illinois law. Since his conviction in 1981, Adams has not spent any five-year span out of prison. He has not spent even five consecutive months out of prison.

Nonetheless, Adams contends that we should overrule *Melvin* and *Walden*. He says that the change in state law confused him about his entitlement to possess firearms. One function of §921(a)(20) is preventing a state from mousetrapping a convict by telling him that all civil rights have been restored while concealing a legal rule that blocks felons from possessing firearms. See, e.g., *United States v. Erwin*, 902 F.2d 510 (7th Cir. 1990), reaffirmed en banc in *Buchmeier*. These decisions interpret the last clause of the statute's final section: "unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Buchmeier*, *Burnett*,

*Erwin*, and other cases understand that language to deal with missing, or potentially misleading, language in documents communicating the pardon, expungement, or restoration of rights. Adams did not receive from the State of Illinois any document telling him that all civil rights had been restored, while omitting a firearms proviso. We deal not with confusing language in a document sent to Adams, but with clear language in state statutes.

Adams insists that *Caron v. United States*, 524 U.S. 308 (1998), holds that there is no difference between restoration of civil rights by document and restoration as a matter of law. That is not what *Caron* says, however. The question in *Caron* was whether a felon who, as a matter of state law, could possess *some* firearms, but not *all* firearms, must be treated under §921(a)(20) as a person whose civil rights have been restored. The Court held that only entitlement to possess all firearms restores civil rights and cause the state conviction to be disregarded for federal purposes.

*Caron* neither says nor implies that advice contained in a pardon or other communication sent directly to a felon is treated (for federal purposes) exactly the same as the content of the state's statute books. The opinion does say, 524 U.S. at 313, that restoration of civil rights by operation of law must be given effect under §921(a)(20). Thus we know that a pardon (or other document) is not the only way to take a state conviction out of the picture for federal felon-in-possession statutes. But the opinion does not say that only state legislation

in effect on the date of the conviction matters, and that the state law as it is on the date of release from prison or whenever else the felon's civil rights supposedly were restored must be ignored. Section 921(a)(20) itself shows that post-conviction events have legal consequences; pardons (and the other documents mentioned in the "unless . . ." clause) come after the conviction. Post-conviction statutory changes are no less relevant than post-conviction pardons to the question whether civil rights have been restored.

Adams contends that *Melvin* and *Walden* conflict not only with *Caron* but also with *McNeill v. United States*, 131 S. Ct. 2218 (2011). The question in *McNeill* was whether a particular state conviction was a "serious drug offense" for the purpose of §924(e)(2)(A)(ii), which defines a drug crime as "serious" if the maximum term of imprisonment is ten years or more. McNeill was convicted of two drug crimes in North Carolina when the maximum sentence was ten years—and he received ten-year sentences on both convictions. The state later reduced the maximum sentence to less than ten years, and McNeill contended that this meant that his drug convictions no longer represented "serious" crimes and therefore did not count toward the three qualifying convictions needed for sentencing as an armed career criminal. The Court rejected this argument after concluding that §924(e)(2)(A)(ii) identifies as "serious" a drug crime punishable by ten or more years when committed, no matter what happens later. This shows, Adams contends, that all post-conviction developments must be ignored when applying the Armed Career Criminal Act.

Yet *McNeill* concerned §924(e)(2)(A)(ii), not §921(a)(20). The latter section concerns the effects of post-conviction developments, such as pardons and commutations. If everything that happens after a crime (or conviction) must be ignored, then pardons and other restorations of civil rights also would be ignored, as they post-date the conviction (and usually post-date release from prison). The holding of *McNeill* that the maximum sentence depends on state law at the time of the crime does not foreclose a reading of §921(a)(20) that asks about state law and practice at the time of the asserted restoration of civil rights. This would be clear if the governor in office when a given person was convicted had a policy of restoring each felon's civil rights on release through pardon or commutation, and, while the felon was in prison, a different governor was elected and decided not to issue such pardons. To apply §921(a)(20) the federal court must decide whether a felon's civil rights have actually been restored (or a misleading document has been received)—and that depends on law and events (including the contents of documents) at the time of the potential restoration.

If *Melvin* and *Walden* are problematic, it is only when a state restores a felon's civil rights and then changes its law after the restoration. Adams never regained his civil right to carry firearms in Illinois, however, so §921(a)(20) does not affect the status of his convictions for the armed robberies in 1981 and 1982.

AFFIRMED